## ROY T. WEST v. STATE.

No. A-2426.    Opinion Filed April 26, 1917.

(164 Pac. 327.)

1. **WITNESSES—Competency—Wife Against Husband.** In a prosecution against a husband for willful and corrupt perjury in making a false affidavit in a suit for divorce against his wife in order to obtain service of summons by publication as required by the statutes of this state, the wife is a competent witness for the state on the trial of such criminal prosecution.

2. **APPEAL AND ERROR—Harmless Error—Instructions—Penalty.** Where the statute fixes the maximum punishment for a crime, but fails to provide a definite minimum punishment therefor, and the court instructs the jury as to punishment practically in the. language of the statute, and no more definite instruction as to the minimum term of imprisonment is requested by counsel for the defendant, the giving of such instruction in the absence of such request is not prejudicial error.

3. **SAME.** Mere technical objections to the wording of the court's instructions do not meet with the favor of this court. The judgment of conviction will not be reversed on the ground of misdirection of the jury unless in the opinion of this court, after the examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right of the defendant.

Appeal from District Court, Oklahoma County;

George W. Clark, Judge.

Roy T. West was convicted of perjury, and he appeals. Affirmed.

Pruett, Sniggs & Tripp, for plaintiff in error.

S. P. Freeling, Atty. Gen., and R. McMillan, Asst. Atty Gen., for the State.

MATSON, J. This was a prosecution against the appellant lodged in the district court of Oklahoma county charging him with the crime of perjury, in that in said court, in an action which the appellant had then pending against his wife, Rhoda A. West, for divorce, the said appellant filed a false affidavit in order to procure constructive service of summons upon the said Rhoda A. West by publication, the information in substance alleging that the said affidavit was false, and that the said defendant at the time knew that it was false, and that the same was filed in said divorce proceeding for the purpose of procuring service of summons by publication; the material allegations contained in said affidavit so filed being as follows:

"That the said defendant did not know whether said Rhoda A. West was at the time in the State of Oklahoma; that the last time he had heard of her was about 18 months prior thereto, and at that time the said Rhoda A. West was in St. Louis, in the State of Missouri; that he was unable to procure service of summons upon the said Rhoda A. West within the State of Oklahoma for the reason that he did not know her whereabouts; and that her whereabouts could not be ascertained by any means within his control."

The state clearly established upon the trial every material allegation of the offense. The only testimony introduced on behalf of the defendant was as to his previous good reputation for truth and as a law-abiding citizen.

Two alleged errors are called to the attention of this court by reason of which counsel for appellant claim that this judgment should be reversed: First, that the

court erred in admitting the testimony of Rhoda A. West, the wife of appellant, over his objection and exception; second, that the court erred in failing to instruct the jury as to the minimum punishment which could be inflicted for said offense.

Section 5882, Rev. Laws 1910, provides:

"Except as otherwise provided in this and the following chapter, the rules of evidence in civil cases are applicable also in criminal cases: Provided, however, that neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other, but they may in all criminal cases be witnesses for each other, and shall be subject to cross-examination as other witnesses, and shall in no event on a criminal trial be permitted to disclose communications made by one to the other except on a trial of an offense committed by one against the other."

It is contended on behalf of the appellant that perjury committed under the circumstances as above set forth is not a crime committed against the wife within the meaning of the above statute, and that therefore the wife is an incompetent witness against her husband in such a proceeding. With this contention we cannot agree. It may be admitted that, if our statute were simply a declaration of the common-law rule, then the wife would be incompetent to testify in this proceeding. Under the common law neither the wife nor the husband was a competent witness either for or against the other, but from the necessity of things an exception obtained to this rule, and the rule was enlarged upon to the extent that in criminal prosecutions against one for personal violence committed upon the other either the wife or the husband, as the case might be, was permitted to

testify against the other in such proceedings. But this court has held that our statute is not declaratory of the common-law rule; that there are other interests not only affecting society at large, but also peculiarly affecting the marital relations, which are as sacred to be protected as prosecutions involving the elements of violence. Therefore this court held in the case of *Heacock v. State*, 4 Okla. Cr. 606, 112 Pac. 949, that in a prosecution for adultery the husband or wife is a competent witness to prove the offense. Also in the case of *Hunter v. State*, 10 Okla. Cr. 119, 134 Pac. 1134, L. R. A. 1915A, 564, Ann. Cas. 1916A, 612, it was held:

"In a prosecution against a father for willfully failing to supply his children with necessary food, clothing, shelter, or medical attendance, his wife is a competent witness against him."

In that case the court, speaking through Furman, J., said:

"In reason and in justice we believe that, whenever a husband or wife is guilty of conduct which constitutes a public offense, and which also constitutes a direct violation of the legal rights of the other, the crime is against such other, as well as against the public, and that such husband or wife should be permitted to testify in all such cases. Suppose a husband should publish a libel or slander upon his wife, would it not be a prostitution of reason and a mockery upon justice to exclude her evidence upon the ground that it would impair the sanctity of the home and destroy the confidence, peace, and harmony of the marital relations to permit her to testify? Many other illustrations could be offered. What we are after is the principle involved, the ground upon which the testimony of the wife is excluded. Considering the substance rather than the form of things, we are of the opinion that the idea that the wife can only tes-

tify against her husband for an assault committed upon her person is a relic of barbarism. We decline to perpetuate any such idea in Oklahoma."

In the case of *Dill v. People*, 19 Colo. 469, 36 Pac. 229, 41 Am. St. Rep. 254, the exact question here involved was under consideration by the Supreme Court of Colorado, and that court, in a very able and exhaustive opinion by Elliott, J., held:

"Where a husband is indicted for willful and corrupt perjury in making a false affidavit in a suit for divorce against his wife, the wife is a competent witness for the state on the trial of such indictment."

In the body of the opinion it was said:

"In the case at bar, defendant was charged with committing the crime of perjury in an action for divorce against his wife. The purpose of the affidavit was to aid him in his suit against her; it was to give the court jurisdiction of the cause without personal service of process upon his wife; and the object of that portion of the affidavit of which perjury is predicated was to enable him to give the court jurisdiction without mailing a copy of the summons to his wife. If in making such affidavit defendant committed perjury, the effect of his crime was to diminish the wife's chances of obtaining notice of the divorce suit and thus deprive her of the privilege of making any defense. It is clear, therefore, that she was the particular individual whose private rights and interests would be affected by the crime. It is true the crime of perjury committed in such a case was a crime against the public administration of justice; the public are deeply interested—every good citizen is interested—in punishing and preventing the crime of perjury; but the perjury in this case was calculated to inflict upon the wife of defendant a direct private injury to her individual rights and interests. That the crime was against her, in the sense in which every crime is an injury to a

particular individual, cannot be doubted. In the first place, the perjury·was liable to deprive her of the right of making defense; if deprived of that right, she might be wrongfully deprived of her husband, and of her right to support from his estate or from his labor; besides, if divorced, she would be subjected to the stigma of having been false to her marital vows. A decree of divorce, in the estimation of all good people, causes ignominy and disgrace to fall, more or less heavily, according to the nature of the case, upon the party adjudged to be in the wrong. The rule of the common law that a wife may testify against her husband in a case where he is charged with a crime of violence against her person rests, it is said, upon the principle of affording her the means of self-protection. In the ruder period in which the common law took its rise life and limb were principally regarded. Property was also esteemed worthy of protection. But the property rights of the wife were greatly restricted, and her personal status was almost entirely merged in that of her husband. In the present age there have been great changes; other than tangible things are more highly esteemed. Should it, therefore, be deemed strange that modern legislation should give the wife the means of protecting that which is often dearer to her than life, liberty, or property?"

The reasons given and the argument supporting those reasons that the wife is a competent witness against her husband in a prosecution such as this meet the entire approval of this court. The doctrine is firmly established in this state, and we do not propose at this time to take a backward step. This crime was peculiarly injurious to the wife. It was a crime committed against her to her particular injury. It tended to deprive her of certain legal and property rights protected by the laws of this state. In our opinion, it would be absurd to say that the false making of such an affidavit

in a divorce proceeding was not a crime against her. It is also immaterial whether or not by reason of such affidavit a divorce was obtained. It was through no fault of this appellant that discovery was made of his attempt to obtain a divorce through perjury and fraud upon the court, and had not this been discovered and prosecution commenced two days before the case was set for trial we doubt not that by such means this appellant would have procured his divorce. It is also immaterial, as we view the matter, whether or not had such divorce been obtained this prosecuting witness could have by law set it aside. Such corrupt practices must be put to an end, and under our criminal procedure it is the duty of this court to so construe the law that the purposes for which it was enacted may be fully carried into effect. We are required under our statutes to give a liberal construction to the law in order to effectuate its purposes. We admit that in the case of *People v. Carpenter*, 9 Barb. (N. Y.) 580, it was held that in a proceeding of this kind the wife was not a competent witness against her husband, but the New York court followed the common-law rule, which this court has already seen fit to discard. We therefore hold that in a prosecution for perjury based upon the making of a false affidavit in a divorce proceeding in order to procure constructive service upon his wife, such crime, under our statutes, is a crime against the wife, and that she is competent to testify for the state.

It is also contended that the court erred in giving the following instruction:

"The punishment prescribed by the law of the State of Oklahoma for the crime charged in the information is imprisonment in the state penitentiary for a period

not exceeding five years. If you find the defendant guilty of said offense, you will, in addition thereto, assess his punishment therefor."

Under the statutes of this state the crime of perjury is punishable by imprisonment in the state penitentiary for various terms of years according to the circumstances under which the false oath was taken. If taken upon a trial for a felony, the punishment is by imprisonment for a period of not less than ten nor more than twenty years. If taken upon any other trial or proceeding in a court of justice punishment is for a term of not less than five nor more than ten years. In all other cases punishment is by such imprisonment not to exceed five years. This offense comes within the punishment prescribed in the last provision of the statute, and it is contended on behalf of the appellant that the instruction is erroneous and prejudicial in that it fails to define the exact minimum term of imprisonment. It will be noted that the court told the jury that, if they found the defendant guilty, they should assess his punishment at imprisonment in the penitentiary for a period not exceeding five years. The instruction therefore was practically identical with the statute, except that the court told the jury that in assessing the punishment the jury must fix a definite period of time. In our opinion, this instruction was equivalent to saying that the jury might fix any period of time not to exceed five years' imprisonment. But it is contended that in the case of *Colbert v. State,* 4 Okla. Cr. 487, 113 Pac. 561, it was held that an instruction which only states the maximum term of imprisonment and omits to state the minimum or alternative punishment that may be imposed, is reversible error. The Colbert Case is easily distinguishable

from this. In that case the punishment prescribed by statute was "by fine of not more than one thousand ($1,000.00) dollars, or by imprisonment for not more than 15 years, or by both such fine and imprisonment." The court in instructing the jury only instructed that, "if they should find the defendant guilty, they should assess his punishment which is not over 15 years in the state penitentiary." In that case the court entirely overlooked the fact that the jury might find the defendant guilty and assess only a fine against him of not more than $1,000 or that the jury might find the defendant guilty and assess both a fine and imprisonment. In other words, in the Colbert Case the court failed to instruct the jury fully as to the punishment provided for the offense by failing to give the alternative punishment that might have been imposed, and for that reason, as indicated in the opinion, the judgment was reversed. Not so in this case. Here the court instructed as to the punishment provided by the statute. If counsel for the appellant had desired a more definite and certain instruction than that given, he should have requested it at the time. This was not done. Also it is our opinion that the jury was not misled by the instruction given.

In the case of *State v. Rose*, 178 Mo. 25, 76 S. W. 1003, it was held:

"An instruction that the jury, on finding defendant guilty, should assess his punishment at imprisonment in the penitentiary for a term of not less than two years or more than seven years, or by imprisonment in the county jail not exceeding three months, was not misleading for failing to designate the minimum punishment by imprisonment in the county jail."

In the body of the opinion it is said:

"The first contention of appellant is that the failure of the court to designate by express terms in instruction No. 1 the minimum punishment as to the imprisonment in the county jail was unfair to defendant, and constitutes error. That part of instruction No. 1 of which complaint is made, after requiring, in usual form, the jury to find a certain state of facts, concludes as follows: 'Then you will find the defendant guilty as charged in the information in this case, and assess his punishment at imprisonment in the penitentiary for a term of not less than two years nor more than seven years, or by imprisonment in the county jail not exceeding three months.' It will be observed that in this instruction the jury are told in express terms what is the maximum punishment by imprisonment in the county jail—not to exceed three months in the county jail. This is the usual form of an instruction intended to guide the jury in fixing the punishment, and we are of the opinion that it is not misleading; and it requires but very ordinary intelligence to understand, from the use of the terms 'or by imprisonment in the county jail not exceeding three months,' that any length of time of imprisonment may be fixed, so that it does not exceed the time expressly designated. There is no merit in this contention, and it must be ruled against the appellant."

We hold, therefore, that where the statute fixes the maximum punishment for an offense, but fails to provide a definite minimum punishment therefor, and the court instructs the jury as to the punishment practically in the language of the statute, and no more definite instruction is requested by counsel for the defendant, the giving of such instruction in the absence of such a request is not prejudicial error.

It is also contended that the court erred in giving the following instruction:

13 O C R—11

"The defendant is not required by law to prove his innocence, but the burden is upon the state to prove his guilt. He is, in law, presumed to be innocent of the offense charged against him, and of each and every necessary ingredient of that offense; and unless his guilt is established upon the trial of the case to your satisfaction beyond a reasonable doubt, or if, after a careful consideration of such evidence, facts, and circumstances, you have a reasonable doubt as to his guilt, you must acquit him."

It is claimed that this instruction is misleading because of the word "such" before the word "evidence"; that it left the jury to form their own conclusion as to what evidence was meant to be considered. With this we cannot agree, for the reason that the instruction, considered as a whole, clearly refers to the evidence, facts, and circumstances established on the trial of the case. Technical objections of this kind do not meet with the favor of this court. The substantial rights of the appellant were not prejudiced by this instruction, and it states the law correctly.

For the reasons above given, the judgment of the district court of Oklahoma county is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.