, Haage's Appeal.

Three executors, in 1818, settled a joint account, in which there was a
balance due the estate of the testator.   In 1837, two of the executors having
died, the surviving executor and the executors of the second deceased executor
settled an account, in which they were charged with the balance due on the
*first* account, and resulting in an increased balance in favor of the estate of
the first decedent.   In 1847, an account was settled by the surviving executor,
in which he charged himself with the balance on the *second* account.   It was
*held*, that the surviving executor, in the distribution of the balance decreed
on the last account, could not set off the amount of the one-third of the balance
on the first account against the claim of the wife of the first deceased executor,
who claimed under the will of her father, the first testator, who had devised
to her the *interest* only of the amount in dispute, and the principal sum to her
children.   The whole of the balance was, on the face of the third account,
admitted to be in the hands of the surviving executor.   The claim of the sur-
viving executor against the husband of the claimant was but an ordinary
debt, which, if recoverable in the Orphans' Court, could only be recovered in
the distribution of the husband's estate; and nearly *thirty years* having
elapsed since the settlement of the *first* account, the claim was barred by the
statute of limitations.   It could not be treated as a payment to the husband

Q

of his wife's legacy, because the principal sum was not payable either to the husband or wife; and because it could not consistently with the proceedings be presumed to have been received by the husband, as the last executor had charged himself with it, as being in his hands at the exhibition of his last account.

In the matter of Sarah Haage's appeal from the decree of the Orphans' Court of Montgomery county, December Term, 1850, No. 25.

This is an appeal from the decree of the Orphans' Court, appropriating the legacy of Sarah Haage out of the estate of her father Jacob Acuff, deceased, to the payment of an alleged debt of her deceased husband, George Haage, to David Acuff, surviving executor of the will of said Jacob Acuff, deceased.

Jacob Acuff left a will dated September 19, 1816, and a codicil of the same date, proved October 28, 1816, the parts of which material here are as follows, viz. :—

"Item. I do hereby authorize and empower my executors hereinafter named, to sell about one-half of the plantation whereon I now dwell, as soon as they may see proper and convenient after my decease, together with other lots not adjoining the same whereon I now dwell, and to be at private or public sale, at the discretion of my executors hereinafter named, giving them or the survivors or survivor of them full power and authority to make and execute as good a deed or deeds, title or titles, as I could have made in my lifetime. I also will and order that my executors hereinafter named, sell at public sale all my live stock and farming utensils and personal estate which is not heretofore bequeathed to my beloved wife Mary during her natural life, and after such or any sale made at private or public sale, all such money arising from such sale *shall be loaned on mortgage* by my executors hereinafter named, and if it shall to my executors appear any time, that my estate will average a dividend of five hundred pounds to each and all my children after deducting the dower of my beloved wife and the taxes and repairs of fencing or new fences, and of the improvements, and all unavoidable expenses, the *interest and rents* shall be annually and equally divided amongst my children, share and share alike, as if named; and after the decease of my beloved wife Mary, when all my estate shall be disposed of, I will and order the same to be equally divided amongst all my children, share and share alike, as if named, in manner following:—I will and order that five hundred pounds (if the dividend will admit of that sum) the share of each of my daughters, to wit: *Sarah,* Margaret, Mary, Christian, Elizabeth, Susanna, and Rebecca, their shares respectively and individually of five hundred pounds be loaned on interest with mortgage by my executors hereinafter named, and the *interest* to be paid annually to them during their natural lives, to each one their respective share, and after the de-

cease of any of my daughters, I will and order *each one's dividend to be divided to their children* which shall be born from their body. But if any of my children shall die and leave no issue, then I will and order that part to revert back to the residue of my estate, and be divided among my children share and share alike.

"I also authorize and empower my executors hereinafter named, to sell at public or private sale the remainder half of my plantation whereon I now dwell, after the decease (or intermarrying) of my beloved wife Mary, to make and execute as good a deed or deeds, title or titles, as I could have done in my lifetime.

"And I do hereby nominate, constitute, and appoint my son, David Acuff, and my son-in-law George Haage and Casper Schlater, sole executors to this my last will and testament."

Letters testamentary were granted to David Acuff, George Haage, and Casper Schlater.

October 16, 1818. *Joint settlement by the executors of Jacob Acuff,* deceased, filed. Balance due estate, $5490.34.

George Haage, one of the executors, died in 1824.

Casper Schlater, another executor, died between the years 1830 and 1837.

August 12, 1837. Settlement of David Acuff, *surviving executor* of the will of Jacob Acuff, deceased, and Henry Scheets, John Schlater, and Ulrich Schlater, *executors of the will, &c., of Casper Schlater,* one of the executors of said Jacob Acuff, deceased, filed. Balance due the estate, $7525.93.

November 15, 1847. *Settlement of David Acuff, surviving executor* of Jacob Acuff, deceased, filed in answer to a citation issued on the petition of Jacob Scheetz. Balance due the estate, $8202.11.

February 23, 1848, this account was referred to an auditor to settle and adjust, who on the 23d of October, 1848, reported a balance due the estate of $15021.37½.

January 18, 1849, the said auditor's report confirmed.

February 20, 1849, auditor appointed to distribute the aforesaid balance of $15021.37½.

May 21, 1849, report of the said auditor filed and confirmed nisi.

The auditor awarded as follows, with reference to the share of Sarah Haage :—

"Sarah Haage's share to be retained by David
    Acuff, for his own use, 1-10      $1270.29
Deduct advancement,      228.50
                         —————— 1041.79

Exceptions to said auditor's report filed by *Sarah Haage and her children,* May 31, 1849.

Upon argument, the report recommitted by the court to the auditor, with instructions to take additional evidence on the points

indicated in the opinion of the court, and such other as may be adduced by the respective parties.

August 29, 1849, declaration and release of Mary Acuff, widow, filed in court.

March 11, 1850, additional report of the auditor filed.

Upon re-argument the court filed an opinion, and made the following decree, viz.:—

"The court accordingly orders the clerk to deduct first from the whole fund the expenses of the second audit, and so proportionably reduce each distributee's share; and then it orders David Acuff, the accountant, to pay or vest, taking mortgage for security, each share as directed in the report; but allows him to take the interest of the share described as Sarah Haage's for his own use annually, until further orders from the court: and it further orders, that as Mary Acuff, the decedent's widow, has filed a release of the $3333.33⅓, set apart for her annuity in consideration of her being permitted to enjoy the real estate therein mentioned, the said David Acuff also pay over and vest in the same way, and proportion this sum whenever the distributees shall have secured said widow in the enjoyment of said land, or an equal sum out of its proceeds in a sale thereof, according to the terms expressed in said release; and in the mean time to pay her the annuity out of the fund. With these corrections, the report is confirmed."

The part of this decree which was mainly objected to by the appellant, *was the allowance to David Acuff of the interest of the share described as Sarah Haage's for his own use annually*, instead of decreeing that the said interest be paid to Sarah Haage annually during life, as has been done with reference to the shares of her sisters.

George Haage left a widow, viz.: Sarah Haage, now living and unmarried, and seven children, all of whom were minors at the time of his death, and are all now living except one, viz.: William A. Haage, who died unmarried without issue.

The children now living are Margaret, Mary, Jacob, David W., Joseph, and Christian Haage.

George Haage left a will dated Feb. 3, 1824.

Proved March 2, 1824. Letters granted to William Acuff and Jacob Acuff, the executors.

The following contains a portion of the will of George Haage, material in this matter:—

"First of all, I will and order all my just debts, funeral expenses, &c., to be paid and satisfied.

"Item. I give and bequeath unto my beloved wife Sarah, all those goods which she brought to me from her father, Jacob Acuff, deceased.

"Item. I will that my executors hereinafter named shall, as soon as conveniently may be after my decease, sell at public

[Haage's Appeal.]

sale my grist-mill, and about ten acres or thereabouts, including the tenement now in tenure of Abraham Sellers, which, when sold, I do authorize my executors hereinafter named, to make to the purchaser as good a title or deed in fee simple as I could have done in my lifetime. Item—Give and bequeath unto my beloved wife Sarah, all the residue of my estate, real and personal, during her widowhood, she educating and bringing up my minor children; but in case my wife Sarah should marry, then after such marriage, I will that my executors hereafter named shall proceed to sell all my real and personal estate, and after such sale, I give unto my wife Sarah the interest of one-third of my estate, real and personal; the other two-thirds to be equally divided amongst all my children, share and share alike, as if named; and also the one-third which my wife Sarah draws the interest of, to be equally divided amongst my children after her decease.

"Lastly, I do appoint my brothers-in-law William Acuff and Jacob Acuff, executors to my estate."

Inventory of personal estate of George Haage, filed April 24, 1824. Amount $1509.37, which includes certain articles marked therein as specifically bequeathed to the widow, amounting to $223.80.

Settlement of the accounts of William Acuff, surviving executor, &c., of George Haage, deceased, filed Nov. 22, 1845.

Balance due accountant, $2.02.

The debit side of this account is made up of the following items, viz:—

| | |
|---|---:|
| To Amount of inventory filed, | $1509.37 |
| " Amount of rents of real estate received, | 1889.61½ |
| " Amount of articles not inventoried, | 5.99 |
| " Amount of mill property sold, | 3110.00 |
| " Amount of interest on deferred payment on mill property, | 75.00 |
| | $6589.97½ |

The credits in the said account are as follows, viz.:—

| | |
|---|---:|
| By amount paid creditors of the estate as particularly set forth therein, | 5417.91 |
| By amount of goods, &c., specifically bequeathed to the widow, and taken by her at their appraised value, as per *inventory and receipt*, | 223.80 |
| By amount of goods, &c., left in possession of the widow for the use of herself and children, | 833.48 |
| Commissions, | 85.10 |
| By cash for making out and passing account, &c., | 31.70 |
| | $6591.99 |

George Haage, at the time of his death, was seised of a mill and

about ninety-one acres of land, on which (excepting the mill and about eleven acres of land which have been sold) his widow has ever since resided, she having educated and brought up all their children.

To the auditor's report which was filed May 21, 1849, making distribution of the estate of Jacob Acuff, deceased, in the hands of David Acuff, surviving executor, exceptions were filed on May 31, 1849, on the part of Sarah Haage, a daughter and legatee of Jacob Acuff, and also by Margaret A. Haage, Mary A. Haage, Christiann Haage, David W. Haage, Joseph A. Haage, and Jacob Haage, the children of said Sarah Haage, and entitled to a portion of decedent's estate after their mother's death.

Exceptions were as follows:

1. The auditor erred in deducting from the balance of the estate in the accountant's hands, the sum of $3333 33⅓ to be set apart as a fund to raise the £75 per annum which the testator bequeathed to his wife to be paid to her annually, as under the will said £75 are to be raised from the rents of the real estate as well as from moneys at interest, and from the shares of the daughters, and the widow has taken the rents, issues, and profits of the real estate unsold, for her said annuity.

The auditor therefore ought to have distributed the whole amount in the accountant's hands ($15,547.07½), among the legatees or their legal representatives, to each $1554.70 instead of $1270.29.

2. The auditor erred in distributing Sarah Haage's share or dividend "to be retained by David Acuff, for his own use."

3. As the shares of the daughters of the testator under his will, are to be loaned on mortgage by his executors, and the interest thereof to be paid annually to them, during their natural lives, and after the decease of any one of them, her share is to be divided among the children born of her body; the auditor ought to have distributed Sarah Haage's share to be loaned on mortgage, the interest thereon to be paid to her annually during her life, and after her death the principal of such share to be paid to the children of said Sarah Haage, instead of distributing said share "to be retained by David Acuff for his own use."

4. As Sarah Haage is entitled to the interest on her share or dividend of the decedent's estate during her life, and such share or dividend after the decease of said Sarah Haage, is directed to be then divided among the children born of her body, this share not coming to said Sarah Haage, wife of George Haage, absolutely, *but to her children after her death,* could not be received or reduced into possession by him as her husband, or be considered as received or retained by him on account of said share of his wife. And no debts due to the estate of the decedent by George Haage, nor any bonds or other evidences of debts owing

to the testator from other persons, remaining in Haage's hands as executor of decedent, can be deducted from or set off against the share given to Sarah Haage and her children by said will.   The auditor therefore erred in setting off the alleged liability of George Haage, co-executor, of $1267.25, and deducting the same from the portion given to Sarah Haage and her children, and allowing David Acuff to retain the amount of such share for his own use.

5. The auditor erred in deciding that from the evidence it was manifest that George Haage had received of the estate $3699.91, and by the settlement of March 13, 1824, was reduced to $1267.25, and that this sum had not come to David Acuff's hands, but was received by George Haage and retained by him and appropriated to his own use; as there was no evidence to sustain such conclusion, or that any money came to the hands of George Haage belonging to testator's estate but what was accounted for by him, the vouchers for which were taken by D. Acuff.

The papers referred to relating to the first sum, are an old memorandum without date, or signature, or evidence where found, and a memorandum in a book, all made before the first settlement of 1818, was filed, and that amount is almost entirely made up of bonds, mortgages, notes, &c., due to the decedent.   The two papers dated March 13, 1824, referred to, to establish the last sum, $1267.25, themselves show this amount is made up entirely of bonds and notes, &c., given by decedent, and interest calculated, and not money; all of which bonds, notes, &c., and other papers and books relating to decedent's estate, were proved to have been delivered to David Acuff after Haage's death, and no evidence that this sum ever came into the hands of George Haage or his representatives was produced, or could be.

6. The auditor erred in deciding that there had been a long-continued acquiescence of Sarah Haage and some of her children, in the disposition of this fund, which disarmed D. Acuff's vigilance, and induced him not to pursue Haage's estate.

Neither she nor his children ever knew or heard of the claim now set up (except that in 1837, nineteen years after the first settlement and fourteen years after Haage's death, the amount in paper " A. M." was mentioned to her and one of the children, without showing the paper or any account thereof).   No assent was then or at any other time ever given to the claim now made either by Mrs. Haage or any of her children, nor any act done by any of them to induce D. Acuff to believe they acquiesced in this demand (or the said disposition of the fund), which has been always denied since known.   And they allege that D. Acuff's forbearance to take any steps to assert the claim now set up, for from 25 to 30 years, and allowing Haage's estate to be set-

tled without presenting such a claim, while he was taking possession of all bonds, papers, and even vouchers of George Haage, relating to the estate, and charging himself with the whole estate, including this sum, in his settlement, and obtaining the written consent of the legatees to the correctness of the settlements, is conclusive evidence that the claim now set up did not exist, and that the whole estate was in his hands.

7. The auditor erred in deciding that Sarah Haage and her children had already received this fund in the distribution of George Haage's estate. There was no proof before the auditor of their having received the fund in this way or any other way; nor any evidence of this in the settlement of George Haage's estate, or in the proceedings relating thereto; nor could they have received such fund or share in any way, or such receipt be enforced: as under Jacob Acuff's will, the said fund or share could not have been paid or received, as it is said to have been received and disposed of.

8. The auditor ought to have distributed the shares to which the daughters are entitled, to them absolutely, or the excess over £500.

The second opinion and decree of the court after argument, after the recommitment of the auditor's report, was as follows:—

"The court sees no reason for changing its former opinion in regard to the principles involved. The facts are varied in some respects by the new evidence, but they fully show that Sarah Haage received enough of personal property from her husband's estate, who was a co-executor and debtor, to the amount of her distributive share to satisfy it. She has therefore in effect had the full use of her share since 1824, being equal in value to all she can claim up to this time. And that property, it is more than probable, still remains in her hands as part of her husband's estate, liable to be taken by means of a citation or otherwise, for satisfaction of what he owes this estate, as one of its executors. The court thinks it inequitable therefore at present to compel this accountant to pay her the interest of the share awarded in her name in this distribution, and accordingly orders the clerk to deduct first from the whole fund the expenses of the second audit, and so proportionally reduce each distributive share; and then it orders David Acuff, the accountant, to pay, or vest, taking mortgage for security, each share as directed in the report; but allows him to take the interest of the share described as Sarah Haage's for his own use, annually, until further orders from the court. And it further orders, that as Mary Acuff, the decedent's widow, has filed a release of $3333.33⅓ set apart for her annuity in consideration of her being permitted to enjoy the real estate therein mentioned, the said David Acuff also pay over and vest in the same way and proportions this sum whenever the distributees shall have secured

[Haage's Appeal.]

said widow in the enjoyment of said land, or an equal sum out of its proceeds on a sale thereof, according to the terms expressed in her said release, and in the mean time pay her the annuity out of the fund. With these corrections, the report is confirmed."

The exceptions filed in the Supreme Court were as follows:—

1. The court erred in dismissing the exceptions to the auditor's report, filed by Sarah Haage, the appellant (and her children), May 31, 1849.

2. The court erred in not altering the report of the auditor in conformity with the exceptions filed.

3. The court erred in deciding that the evidence in the case shows that Haage's indebtedness as executor of Jacob Acuff's estate was $1267.25 in 1818 (1823).

4. The court erred in entertaining the claim of David Acuff against the estate of George Haage, dec'd., in the distribution of the estate of Jacob Acuff, dec'd., as the court had not jurisdiction of said claim.

5. The court erred in decreeing that David Acuff, the accountant, was entitled to take the interest of the share described in the auditor's report as Sarah Haage's, for his own use annually.

The case was argued by *B. F. Hancock* for the appellant.

*D. H. Mulvany*, for appellee.—George Haage, the husband of Sarah Haage, the appellant, was one of the executors of the last will of Jacob Acuff, deceased. In 1818, he joined his two co-executors, David Acuff and Casper Schlater, in a settlement, whereby there appeared a balance due the estate of their testator of $5490.13. On the face of this settlement, George Haage would be liable to account to his co-executors for one equal third of the amount of the balance, to wit, the sum of $1830.04. But after his decease, to wit, on the 13th of March, 1824, it was settled by an account made out by *his* executors, and the two surviving executors of Jacob Acuff, deceased, that the true amount which was in the hands of George Haage at the time of his decease, belonging to the estate of his testator, was $1267.25, with interest thereon from April 1, 1823. Now, with this sum of $1267.25, David Acuff, as surviving executor of the will of Jacob Acuff, was charged in his subsequent settlements, and it forms part of the balance of $15,428.49, which was finally decreed against him, as being the fund in his hands for distribution, and to the one-tenth part of which, after deducting advancement, amounting to the sum of $1041.79, Sarah Haage would have been entitled, but for the circumstance that the money *had never come into the hands of David Acuff*, but had been received by her own

husband in his lifetime, had been bequeathed by him in his will *to her*, and had been actually received by her from his executors! Her attempt now is, to compel David Acuff to pay over money to her which he never received, but which is already in her own hands.

The appellant, after acquiescing for a period of twenty-six years in the settlement made between the executors of her husband and the surviving executors of her father, by which the balance due from her husband was ascertained to be $1267.25, now denies the correctness of the account, and asserts that the true balance was only $653.28. For all the purposes of the case, however, it is immaterial whether the former or the latter sum be regarded as the correct amount. The "share of Sarah Haage," as ascertained by the auditor in 1850, was $1041.79, whereas, $653.28, with interest thereon from 1824 to 1850, a period of twenty-six years, would amount to the sum of $1772.22, showing still *a loss* on the part of David Acuff to the amount of $730.43. That the true amount of Haage's indebtedness, however, in 1824, was the full sum of $1267.25, is shown by the papers in evidence in the case, and by the auditor's report, and by testimony.

Although the husband of Sarah Haage directed in his will that all his just debts should be paid, yet *this debt* never was paid, and she got *the whole of his estate*, for life, including $833.48 of the personal property. Sarah Haage did know of the existence of the debt, as is shown by the testimony of Andrew Gilkeson and others; and if the executors of her husband had actually paid the debt out of his estate, her interests would still have been much better subserved by taking the residue under the will, than by electing to take her dower at common law. At any rate, she did take under the will, and thereby acquired the very fund, or its equivalent, which she now seeks to recover again: Ellis *v.* Baldwin, 2 *W. & Ser.* 263; 9 *Ves.* 174; 12 *Id.* 497.

Opposed to the argument on the part of the appellant that her husband *could not* have received her legacy prior to his death, because it was not due at the time, is the *fact* that *he did receive it*.

As the whole share which, under other circumstances, might be due to Sarah Haage in her lifetime, or to her children after her decease, is not sufficient to pay the debt due to the appellee, it is unnecessary to pursue the argument further.

The opinion of the court was delivered January 5, 1852, by

LOWRIE, J.—When, in 1818, the three executors of Jacob Acuff settled their joint account, and that was confirmed, this confirmation was a decree of the court that they jointly had the balance, $5490.34, of the estate of Jacob Acuff in their hands. It may be that George Haage's share of that balance was properly settled in 1823, at $1267.25. But he died in 1824.

When, in 1837, the other two executors settled a second account,

charging themselves with the balance due of the first account, and that was confirmed, this was a decree that they jointly had the whole estate, $7525.93, in their hands, and that George Haage and his executors owed the estate of Jacob Acuff nothing.

When, in 1847, the surviving executor, David Acuff, settled a third account in which he was charged with the balance of the second account, and that third account was confirmed, this was a decree that David had the whole balance of his father's estate in his hands, $15,021.37, and that the other executors had none of it.

In 1837, therefore, if not before, George Haage and his executors were by the decree of the court declared to owe nothing to the estate of Jacob Acuff, and were finally discharged from all account, and from any connection with the proceedings in the Orphans' Court, and have never since been recalled into court as parties.  By that decree the alleged balance of $1267.25 ceased to be a debt to the estate of Jacob Acuff; and if it remains as a debt at all, it is a debt to David Acuff individually, and not in his character as executor; because he was forced as a joint debtor to take it all on himself, and the executors of George Haage were, as to the estate of Jacob Acuff, discharged from it.

Now it must be plain that, in the distribution of Jacob Acuff's estate among his legatees, David Acuff cannot claim to set off this debt of George Haage against the legacy coming to his wife, Sarah Haage; because it is an ordinary debt not recoverable in the Orphans' Court, at all events not recoverable there except in another proceeding, that is, in the distribution of George Haage's estate; because the debtors, George Haage's executors, and the creditor, David Acuff, in his individual capacity, are not parties to the proceeding; and because the claim is barred by the statute of limitations.  As a debt therefore it is entirely eliminated from the matter upon which the Orphans' Court was sitting in judgment.

But it is argued that, if this debt was due by George Haage in 1823, it went to increase the estate which his widow Sarah Haage enjoys under his will, and, as the payment of it out of that estate would diminish to that extent her share of her husband's estate, it is proper to let her keep her husband's estate untouched, and to refund David Acuff out of her money in his hands as the executor of her father's estate.

Now, however strongly the suggestions of honesty may incline the court to amplify its jurisdiction to favor an honest claim, in the spirit of the maxim, *mala restringi, et bona convenit ampliari,* yet it must not be forgotten that there is natural justice in government refusing a remedy where the claim has become doubtful by lapse of time, and by the neglect of the claimant; and that the authority of the court is very properly limited.  The court can neither transgress its jurisdiction nor the principles of law in order to enforce even the plainest justice; and it is better that indivi-

dual instances of injustice should escape redress, than that the court should disregard the forms of justice, which are necessary to juridical order and stability, and those restrictions upon authority which are necessary to individual liberty.

As a debt of George Haage to David Acuff, we have seen that this claim could not be set off. Can it be treated as a payment to him of his wife's share? This is impossible. If he had had a right to receive it for her, it might possibly have been presumed that he had so received it. But it is a fact, shown by the will of Jacob Acuff and by the state of the accounts, that neither he nor she had any right then to receive even the interest of it. Moreover it cannot, consistently with other circumstances, be presumed to have been thus received or retained; for in 1837 and in 1847 the claimant, David Acuff, charges himself in his accounts with having this very money still in his hands, and because it is perfectly apparent that he received it as executor. His death did not change that intention.

But in all its aspects, the claim is of a most singular and doubtful character. We hear of it in 1823 and 1824, and not again until 1849, except that there is some ambiguous evidence that his widow admitted it in 1837. No interest appears to have ever been paid or claimed on it. David Acuff settles two accounts in which no notice is taken of it, though it is included in the general balance declared to be due by himself. And besides this, the executors of the real debtor, George Haage, settled their accounts in 1845, and it was not claimed there. Under such circumstances of incompatible acts and negligence, it would be most dangerous to the principles of administrative justice to enforce this claim. There are solemn acts and an eloquent silence that forbid any judicial conclusion in favor of its existence.

January 5, 1852. This cause came to be heard on the appeal of Sarah Haage, from the decree of the Orphans' Court of Montgomery county, and was argued by counsel, and thereupon, on consideration thereof, it is ordered, adjudged, and decreed, That the decree of the said Orphans' Court be reversed, so far as it allows any deduction from the share of the said Sarah and her children, on account of the claim of David Acuff, and that the record be returned to the said court, with directions to proceed to make distribution, without any regard to said claim, and that the said David Acuff pay the costs in this court.