## Commonwealth v. Wilson.

(Decided March 11, 1921.)

### Appeal from Metcalfe Circuit Court.

1. False Pretenses—Indictment and Information.—An indictment accusing the defendant of the offense of procuring money or

property by fraudulent pretenses should specially aver the falsity of the pretenses alleged, it not being sufficient to aver only that the pretenses were false and known by the defendant to be so. The indictment should follow the rule required in indictments for perjury and false swearing in this respect.

2. False Pretenses—Competency of Wife to Testify Against Husband.—The wife of the defendant in an indictment accusing him of obtaining money or property under false pretenses is a competent witness against him where the property obtained is that of the wife; and the false pretenses were made while the husband was acting as agent for the wife, and consisted in misrepresenting the instructions which she had gvien him as her agent.

J. LEWIS WILLIAMS, Commonwealth's Attorney, JAMES TUDOR, County Attorney, and CHAS. I. DAWSON, Attorney General, for appellant.

V. H. BAIRD, M. O. SCOTT, D. B. STONE and J. W. KINNAIRD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Certifying the law.

The appellee, F. W. Wilson, was indicted by the grand jury of Metcalfe county for "unlawfully and feloniously obtaining money from another by false pretenses," and upon his trial thereunder he was convicted and his punishment fixed at confinement in the penitentiary for two years. The court sustained his motion for a new trial and set the verdict aside and continued the case. The Commonwealth has appealed to this court, under the provisions of section 335 of the Criminal Code, for the purpose of having the law certified to the trial court. The order granting the new trial does not state the grounds which influenced the court to make it, but we gather from the briefs that the court was of the opinion that the indictment was defective in failing to expressly negative the facts which the defendant falsely represented and pretended to exist, and by means of which he accomplished the fraud, and that the allegation in the indictment that, "all of said representations and statements made as aforesaid were false and fraudulent and known to be false and fraudulent by the said F. W. Wilson when made by him," was not sufficient for that purpose. We think the new trial was authorized upon this ground.

In 8 Encyclopedia of Pleading and Practice, page 880, the text says: "While it is not necessary that an

indictment for obtaining goods by false pretenses should negative all the pretenses used, it is essential that it should negative such material pretenses as the prosecution expects to prove false, by such specific averment as will suffice to give the defendant notice of what he is to prepare to defend. Such averments of falsity should be as specific and distinct as in an assignment of perjury." And this court in the case of Commonwealth v. Sanders, 98 Ky. 12, held that the allegations of the indictment for this offense should be as direct and specific as is required in indictments for false swearing or perjury, in which last two offenses it is the settled rule that the falsity of the matters sworn to must be negatived by special averment. That case was followed by those of Commonwealth v. Caldwell, 121 S. W. (Ky.) 480, and Commonwealth v. Nunnally, 124 S. W. (Ky.) 313. In the Nunnally case, after referring to the others, the opinion said: "To allege that the statement was 'false' is not sufficient. The indictment should have charged that the mule was not the property of the accused, Sidney Nunnally." In that case the false pretense charged was that the defendant Nunnally falsely represented himself to be the owner of a certain mule, which representation induced the one defrauded to purchase it and to pay to the defendant the purchase price. Other cases follow the ones referred to and the rule of practice is now a settled one in this jurisdiction.

Another question presented by the record is, whether the wife of defendant, Wilson, who was divorced at the time of the trial, but not so at the time of the commission of the offense, was a competent witness to prove the falsity of the representations and pretenses made by the defendant and by means of which he accomplished his fraudulent purpose under the circumstances of the case? The facts, as disclosed by the record, are that Mrs. Wilson, before her marriage to the defendant, was the widow of a Mr. Comer, from whose estate she obtained $600.00, which at the time of the commission of the offense was on deposit in her name in the Peoples Bank of Metcalfe County at Edmonton, Kentucky. She had married the defendant, who was a widower, but it does not appear that he had any children. On the occasion of the commission of the offense Mrs. Wilson desired to draw from her account in the bank the sum of $50.00. Neither she nor her husband, the defendant, could write but each

could sign their names. She signed a blank check and
directed defendant to have the cashier of the bank fill
it out for $50.00, and to pay to him for her that sum
which he was to deliver to her, all of which he
undertook to perform. Instead of having the cashier
fill out the blank check he carried it to a mer-
chant and procured it to be written to himself and for
the entire amount of the deposit, $600.00. He thereafter
presented the check to the bank as thus written and
verbally stated to the cashier at the time, after inquiry
made, that his wife desired to check out the entire de-
posit, after which the cashier paid to him the amount
of the check as he had procured it to be written. Upon
his return home he gave to his wife only $50.00 and
represented to her that it was the only sum he had drawn
from the bank, and she did not learn to the contrary
until after the lapse of several days.

So much of section 606 of our Civil Code of Practice
as bears upon the question involved says: ''Neither a
husband nor his wife shall testify while the marriage
exists or afterwards concerning any communication be-
tween them during marriage. Nor shall either of them
testify against the other. Nor shall either of them tes-
tify for the other, except in an action for lost baggage or
its value against a common carrier, an innkeeper or a
wrongdoer, and in such action either or both of them
may testify; and, except in actions which might have
been brought by or against the wife, if she had been
unmarried, and in such actions either, but not both, of
them may testify. (And except that when a husband or
wife is acting as agent for his or her consort, either of
them may testify as to any matter connnected with such
an agency.)''

This court in the case of Commonwealth v. Sapp, 90
Ky. 580, reviewed at some length the law upon the ques-
tion of practice under consideration and held that the
Code provision upon the subject was ''but declaratory
of the common law'' and that 'the rule that husband and
wife can not testify for or against each other is subject
necessarily to some exceptions, one of which is, where
the husband commits or attempts to commit a crime
against the person of the wife.'' In that case the hus-
band was indicted for an attempt to poison his wife and
it was held that she was competent to testify as to his
conduct, which she observed during his preparation to

commit the crime. Subsequent cases, which it is not necessary for our present purpose to cite, follow the rule laid down in that case. The Code provisions in existence at the time of that opinion were practically the same as the present section 606, *supra,* except the legislature in 1898 amended it by adding the independent clause (now in parenthesis), saying: "And except that when the husband or wife is acting as agent for his or her consort, either of them may testify as to any matter connected with such an agency." The exception permitting the wife to testify in a criminal prosecution against her husband for an offense or an attempted offense against her person is in direct conflict with the express statement of the section of the Code, saying: "Nor shall either of them testify against the other," which was also the common law rule; but the exception was created and is allowed from the necessities of the case in order to subserve the larger policy of the state, that the guilty should be punished, which would in many cases be defeated if the mouth of the wife was closed and she was not permitted to testify to the facts constituting the offense against her person. Indeed it is stated in the Sapp case that, "The policy (under the common law as well as under the statute) upon which the rule that the husband or wife can not testify against each other, is based, is so far overcome as to create the exception by that superior policy which dictates the punishment of crime, and which, without the exception to the rule, would very likely go unpunished. It is of necessity." The opinion continues and holds that notwithstanding the positive language of the section forbidding a husband or wife to testify against each other, the exception under consideration prevailed. It is insisted that, upon equally sound reasoning, the same superior policy of the state which dictated the exception to the rule there under consideration, would also dictate another one to the effect that either spouse might testify against the other upon a criminal charge where the offense was directed against the property of the offered witness. But, we do not feel it incumbent upon us to determine the question in this opinion, since we have concluded that for another reason, to be hereinafter noticed, in connection with the fact that defendant's crime was directed against the wife's property, she was a competent witness to testify

in this case as to the falsity of the pretenses alleged in the indictment.

The Sapp case, *supra*, is also reported in 29 American State Reports, 405, and following the opinion there is an extended note by Mr. Freeman, the annotator, discussing the doctrine of privileged communications between husband and wife. On page 420 of that volume, it is said: "The rule is well established, that when a wife acts as agent for her husband, or the husband acts as agent for his wife, either may testify to the acts or communications within the scope of such agency in any case in which such acts or communications are involved, and this, whether either spouse is a party or not, and whether the evidence makes against either or not as the case may be. This rule prevails generally, with, so far as we have been able to find, one exception, notwithstanding the general rule that all acts and communications between husband and wife during the existence of the marriage relation, and made while they are alone, are privileged, and cannot be disclosed in testimony by either." Among the numerous cases cited in support of the statement are those of Darrier v. Darrier, 58 Mo. 222; Southwick v. Southwick, 49 N. Y. 510, and Stickney v. Stickney, 131 U. S. 227. Other cases from the appellate courts of a number of states are referred to, and the only court holding to the contrary is the Massachusetts Supreme Court in the case (cited by Mr. Freeman) of Commonwealth v. Haynes, 145 Mass. 289, which was decided in 1887; but the same court, to some extent at least, narrowed that opinion in the later case of Nichols v. Rosenfeld, 181 Mass. 522, decided in 1902, after the annotation was written. See also to the same effect 40 Cyc. 2355-2356. Under this exception to the general rule, as it existed at common law, it is competent, as will be seen in the annotated note, *supra*, to prove by either spouse not only the conversations and acts relating to the agency and connected therewith, but also the fact of agency.

In the Darrier case, *supra*, the husband wrote to his wife to purchase certain land for him. She made the purchase but in violation of his instructions she took the title in her name and afterwards claimed the property as hers. The husband instituted some kind of a proceeding against her to correct the deed and at the trial offered his letter containing his instructions to her as evidence.

The trial court rejected it, but the Supreme Court of the state, on appeal, held that the letter was competent although a communication between husband and wife, upon the ground that it concerned the relationship of agency between the husband and the wife.

The Southwick case was an action by the wife against her husband to recover an alleged balance of money in his hands which she claimed belonged to her as her separate estate and which her husband had received as her agent. The appellate court held that each party might testify as to the matters touching the agency, saying: "But there is nothing of the nature of confidential or privileged communications in the matters here proved. They are the commonplaces of business and of every day affairs, and such as pass hourly from a principal to his agent or purse-bearer, and were the same as would have been made by the plaintiff to any other person, her agent."

If at common law it was competent for either spouse to testify against the other concerning matters relating to an agency existing between them (under the interpreted exception now under consideration), for a still greater reason would they be competent to testify as to such matters under the express exception to that effect enacted by our legislature, as we have seen, in 1898, and now a part of section 606, *supra,* of the Code. By parity of reasoning, if the common law public policy which excludes altogether communications between husband and wife, shall surrender to the exception now under consideration, where only private rights are involved, *a fortiori* should our public policy, as declared in section 606 of our Code, surrender to our also (statutory) declared exception in criminal prosecutions, where public rights are involved, and where all members of society are interested in procuring the punishment of the guilty, and where the state is interested in having its criminal laws, enacted for the benefit of society, enforced. There might possibly be some ground for hesitation in applying this exception to the general rule in those criminal cases where the crime with which the defendant is charged was not aimed at, or in any wise involved, the property of the other spouse; but where, as in this case, the alleged offense of the defendant was one against the property of the wife and was committed while he was acting as agent for her, we entertain no doubt but that the wife

may testify as to the authority and the instructions which she gave him and which he promised to obey.

We would not be understood as announcing a principle applicable to criminal prosecutions generally, but confine the opinion to facts and circumstances similar to those appearing in this case.

We find no other questions either presented by the record or argued in briefs sufficiently meritorious to require discussion. Wherefore this opinion is certified to the trial court as the law of the case.