## Commonwealth v. Allen.

(Decided May 24, 1921.)

### Appeal from Logan Circuit Court.

1. Witnesses—Husband and Wife.—While the rule anciently announced by the common law and, much later, reaffirmed by the Kentucky Civil Code of Practice, section 606, declaring that neither a husband nor his wife shall testify for or against the other, is based upon a humane public policy intended to protect the sanctity of the home and peace and happiness of the family, like practically all other rules it has its salutary exceptions, one of which is that the wife may testify against the husband in a criminal prosecution for a crime committed or attempted by him upon or against her person. Hence, the refusal of the trial court in this case to permit the wife to testify as a witness against her husband on his trial under indictment for committing an abortion upon her person, resulting in a miscarriage, was error.

2. Witnesses—Husband and Wife.—In such case the policy upon which the common law and Code rule, that the husband and wife cannot testify for or against each other, is based, is so far overcome as to create the exception by that superior policy which dictates the punishment of crime, and which, without the exception

to the rule, would very likely go unpunished. The exception ex-
ists of necessity.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR,
Assistant Attorney General, JAMES R. MALLORY and COLEMAN
TAYLOR for appellant.

S. R. CREWDSON and S. R. TRIMBLE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Certifying
law.

The grand jury of Logan county found and returned
in the circuit court of that county an indictment against
the appellee, John H. Allen, accusing him of the crime of
abortion. Omitting the merely formal parts of the in-
dictment, its description of the acts constituting the crime
charged is as follows:

"The said Allen . . . did unlawfully, wilfully
and feloniously use a metal instrument, a spoon or sound,
a more particular description of which is to the grand
jury unknown, upon the body and person of his wife,
Sallie Mildred Allen, who was at the time pregnant, dur-
ing the period of gestation, which was well known to him,
by forcing, thrusting and inserting the said instrument
into the body, private parts and womb of the said Mrs.
Allen, with the intent thereby to procure the miscarriage
of said woman, all of which was over her protest, against
her will and not necessary to preserve her life, and, as a
result of said acts so done with the intent and in the man-
ner aforesaid, the miscarriage of the said Mrs. Allen was
procured, the death of two unborn children was caused
and the said Mrs. Allen did miscarry. . . ."

The trial of appellee under the indictment resulted in
his acquittal by the verdict of the jury. Complaining of
the ruling of the trial court in excluding certain evidence
offered in its behalf, and of its refusal to grant it a new
trial, the Commonwealth has appealed.

The crime of abortion is defined and made a felony by
Kentucky Statutes, section 1219a, subsections 1, 2, 3 and
4. The penalty prescribed by subsection 1 being appli-
cable where the conviction of the accused results from his
committing, with the intent to procure a miscarriage,
when not necessary to preserve the woman's life, the acts
by which, as defined by the section, it may be effected, but
without actually causing it. The penalty prescribed by
subsection 2, applies where the conviction of the accused
occurs by reason of his committing, with the intent to

procure a miscarriage, when not necessary to preserve the woman's life, the acts described in subsection 1 and the miscarriage actually results from such acts, and, in addition, causes the death of the unborn child, whether before or after quickening time. If, however, the woman upon whom the acts described in subsection 1 are committed with the intent to procure the miscarriage, when not necessary to preserve her life, should by reason thereof die, subsection 3 of the statute provides that the person offending, if convicted, "shall be punished as now prescribed by law, for the offense of murder or manslaughter as the facts may justify." By subsection 4 it is provided that the consent of the woman to the means employed to procure the abortion shall be no defense; that she shall be a competent witness in any prosecution under the statute, and for that purpose shall not be considered an accomplice.

It is apparent from the language of subsections 1, 2 and 3 of the statute, *supra,* that the offense denounced by each is a felony; and manifest from that of the indictment in the instant case that the acts alleged therein to have been committed by the appellee constitute the offense as defined in subsections 1 and 2, for which, if found guilty by the jury, he would have been amenable to the punishment, by way of confinement in the penitentiary, prescribed by subsection 2.

Without raising the question in the court below, or seriously arguing it here, counsel for the Commonwealth contend that the indictment is not sufficient to sustain a conviction; hence, the appellee was not placed in jeopardy by his trial thereunder, for which reason the judgment appealed from should be reversed and the case remanded with direction to the court below to set it aside and refer the case to the grand jury for the return of another and sufficient indictment against appellee. Without consuming time in discussing this contention it is deemed only necessary to say that the indictment in form and substance sufficiently complies with the provisions of the Criminal Code, sections 122, subsections 1, 2; and section 124, subsections 1 to 4 inclusive, in that it is direct and certain as regards: (1) The party charged; (2) the offense charged; (3) the county in which it was committed; (4) "A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to

enable the court to pronounce judgment, on conviction, according to the right of the case." While the indictment does not attempt to follow the language of the statute, it omits no allegation of fact or circumstance necessary to constitute the offense therein named. Therefore, it is clear that the appellee was placed in jeopardy by his trial thereunder in the court below and that this court is powerless to reverse the judgment of that court based upon the verdict of the jury acquitting him of the crime charged. So our authority is confined to a review of such of the rulings of the circuit court on the trial as are assigned as error on the appeal and to declaring the law regarding same.

The remaining important question presented for decision by the appeal, and respecting which counsel for the appellant are most insistent, is, was the wife of the appellee, the party injured by his alleged acts constituting the crime charged in the indictment, a competent witness for the Commonwealth on his trial under the indictment? It appears from the record that the only evidence introduced on the trial of appellee in the court below was in behalf of the Commonwealth, and while it was sufficient to prove that appellee's wife suffered a miscarriage as charged in the indictment, resulting in the premature birth of two children (twins) without life, and that such miscarriage was caused by some sort of force or violence employed upon the person of Mrs. Allen, with the exception of one witness who testified as to a statement of appellee that his wife was pregnant, and, in substance, that he intended to cause her to have a miscarriage, there was little, if anything, in the evidence tending to connect him with the procurement of the abortion, which doubtless led the jury to entertain such doubt of his guilt as to cause the verdict of acquittal returned by them. It was to supply this lack of evidence, therefore, that the wife of appellee, who better than all others knew the facts regarding his guilt or innocence, was offered as a witness by the Commonwealth. She was, however, excluded upon appellee's objection, as a witness and her offered testimony rejected by the trial court, to which ruling counsel for the Commonwealth at the time took an exception and thereupon entered of record an avowal that the witness, Mrs. Allen, "If permitted to testify, would state that her husband (appellee) over her protest and against her will forcibly inserted a metal instrument into her private parts, person and body for the purpose of causing a mis-

carriage of her unborn child, (or children) and the result of same was a miscarriage.''

. The antiquity of the common law rule that neither the husband nor wife shall testify for nor against the other is so great as to render even the century of its origin well nigh undiscoverable. It was mainly founded upon two reasons: (1) The danger of causing dissension and of disturbing the peace of families; (2) the natural repugnance in all fair minded persons to compelling the husband or wife to be the means of the other's condemnation. It may therefore be said that the rule in question was bottomed upon a humane public policy intended to protect the sanctity of the home and happiness of the family. But the rule, like practically all others, has its salutary exceptions, one of which is that the wife may testify against the husband in a criminal or penal prosecution for an offense or attempted offense against her person.

In Com. v. Sapp, 90 Ky. 580, we had occasion to pass directly on this question. Sapp was indicted for attempting to poison his wife, and upon his trial the wife was offered by the Commonwealth as a witness against him, its counsel avowing that she would state that she saw the husband sprinkle a substance upon a piece of watermelon intended for her, which substance was shown by other testimony on the trial to be arsenic, a deadly poison. The trial court refused to permit her to testify, holding that she could not be a witness for any purpose. But on the appeal of the case we held that her rejection as a witness was error. The opinion, following a review of the common law and numerous judicial decisions on the subject, declares that section 606 Civil Code of Practice is ''but declaratory of the common law;'' and that notwithstanding its emphatic provisions to the effect that neither a husband nor his wife shall testify for or against each other, this rule ''is subject necessarily to some exceptions, one of which is, where the husband commits or attempts to commit a crime against the person of his wife.''

Although in the case, *supra*, the wife had been divorced from the husband before she was offered as a witness, this fact the court held of no consequence, saying in the opinion:

''The policy upon which the rule that the husband and wife cannot testify for or against each other is based, is so far overcome as to create the exception by that superior policy which dictates the punishment of crime, and

which, without the exception to the rule, would very likely go unpunished. It is of necessity. If it be said that our statute forbids the introduction of the husband or wife as a witness against the other, we reply and so did the common law; and yet the exception named existed, and so it should, in our opinion, under our statute. The necessity of the case requires such a construction, and, as already said, the statute forbidding husband or wife to testify against each other is but declaratory of the common law. As the divorced wife would have been a competent witness if she had still been the wife of the accused at the time of the trial as to the alleged attempted felony upon her, it follows *a fortiori,* that being divorced did not disqualify her.''

In Wharton's Criminal Law, vol. 1, sec. 769, it is said:

''Where, however, violence has been committed on the person of the wife by the husband, she is competent to prove such violence.'' Roscoe's Crim. Evidence, 150; Stein v. Bowman, etc., 13 Peters 221.

In the very recent case of Commonwealth v. Wilson, 190 Ky. 813, the right of the wife to testify against the husband in such a state of case as is here presented is recognized. In approving in that case the decision holding the wife a competent witness against the husband, reached in Com. v. Sapp, *supra,* we said of the exception, both to the common law and Code provisions, upon which her right to testify was therein rested:

''But the exception was created and is allowed from the necessity of the case in order to subserve the larger policy of the state, that the guilty should be punished, which would in many cases be defeated if the mouth of the wife were closed and she was not permitted to testify to the facts constituting the offense against her person.''

In Commonwealth v. Wilson, *supra,* we held that the wife was a competent witness against the husband under an indictment accusing him of obtaining by false pretences upon her check, fraudulently made out by his procurement for an unauthorized amount, money belonging to the wife. The question decided, therefore, was whether the wife was a competent witness against the husband where the offense charged was one affecting her property, instead of her person as in the Sapp case. But the opinion, in responding to the insistence of counsel for the Commonwealth, that the superior policy of the state constituting the exception to the rule of the common law and Code provisions under which the competency of the

wife's testimony was declared in the Sapp case, made the wife a competent witness where, as in the Wilson case, the crime of the husband caused the loss to her of her property, while admitting the force of this contention and the support given it by the weight of authority in other states, held the decision of the question unnecessary, as the competency of Wilson's wife as a witness against him was put beyond doubt by the amendment to section 606, Civil Code, made by act of the legislature of February 23, 1898, providing: "And except that when a husband or wife is acting as agent for his or her consort, either of them may testify as to any matter connected with such agency." So while it is true, as claimed by counsel for appellee, that the court did not have before it in Com. v. Wilson, the precise question passed on in Com. v. Sapp, its approval of the conclusion regarding the wife's competency as a witness against the husband expressed in the opinion of the latter case, and of the reasons supporting the conclusion, persuasively indicate it to be the intention of the court to be understood as adhering to the rule as to the wife's right to testify against the husband, where, as in the Sapp case and the instant case, the crime of the latter was commited or attempted to be committed on the person of the wife.

In Barclay v. Commonwealth, 116 Ky. 275, we reaffirmed the rule of necessity with respect to the right of the wife to testify against the husband, announced in Commonwealth against Sapp, *supra.* Barclay was indicted for unlawfully and feloniously hiring and procuring a man unknown to the grand jury and without authority to solemnize a marriage, to conduct and solemnize, under pretense of having such authority, a marriage between him (Barclay) and Adeline Chandler. On the trial of Barclay under the indictment, Adeline Chandler, over his objection, was permitted by the court to testify against him as to the mock marriage, which, according to her testimony, she supposed had been legally solemnized by one having authority to act in performing such a rite. After the pretended marriage Barclay took her to Tennessee and there lived with her a week as his wife, she believing all the while that they had been legally married.

Section 2110 Ky. Statutes makes it a felony, punishable by confinement in the penitentiary not exceeding three years, for any person not authorized to solemnize a marriage, to do so under pretense of having such au-

thority. Barclay as an accessory to the false marriage and before the fact, was liable under section 1128 Ky. Statutes to the same punishment as the person by whom the illegal marriage was pretended to be solemnized. Section 2097 Ky. Statutes declares a marriage void when not solemnized or contracted in the presence of an authorized person or society. It is however provided by section 2102 that ''no marriage solemnized before any person professing to have authority therefor shall be invalid for the want of such authority, if it is consummated with the belief of t heparties or either of them that he had authority an dthat they have been lawfully married.''

On the appeal of the case it was insisted for the appellant, Barclay, that, as the marriage had been consummated with the belief on the part of Adeline Chandler that she and appellant had been lawfully married, it was by the terms of the statute not invalid for want of authority in the person solemnizing it, for which reason she could not testify against him. But in overruling this contention we in the opinion said:

''We cannot concur in this conclusion. The case falls within one of the well settled exceptions to the rule that a wife cannot testify against her husband. In 1 Greenleaf on Evidence, section 343, it is said: 'To this general rule excluding the husband and wife as witnesses there are some exceptions, which are allowed from the necessity of the case, partly for the protection of the wife in her life and liberty, and partly for the sake of public justice. But the necessity which calls for this exception for the wife's security is described to mean, 'not a general necessity, as where no other witnesses can be had, but a particular necessity, as where, for instance, the wife would otherwise be exposed, without remedy, to personal injury.' Thus a woman is a competent witness against a man indicted for forcible abduction and marriage, if the force were continuing upon her until the marriage, of which fact she is also a competent witness, and this by the weight of the authorities, notwithstanding her subsequent assent and voluntary cohabitation, for otherwise the offender would take advantage of his wrong.

''Other authorities might be cited, but the principle is so well settled that we deem it unnecessary. If the rule were otherwise, it would be in the power of the defendant by consummating the marriage, and thus adding another

wrong to the crime he had already committed in procuring the mock marriage, to protect himself from punishment for the crime.''

Under the ruling in Commonwealth v. Sapp and Barclay v. Commonwealth, *supra*, it may be said to be a well settled rule of law in this jurisdiction, that the wife is a competent witness against the husband in a prosecution of the latter for a criminal offense alleged to have been committed upon or against the person of the former.

In a majority of the states the courts recognize the right of the wife to testify against the husband in a criminal prosecution against the latter for an offense involving actual or threatened injury to her person; and in many of them the doctrine that the wife may testify against him in any criminal prosecution charging him with injury to her property, is also given recognition. Williamson v. Morton, 2 Md. Chancery 94; Miller v. State, 78 Nebr. 645; Murray v. State, 48 Tex. Cr. App. 141; People v. Narthup, 50 Barb (N. Y.) 147; Com. v. Spink, 137 Pa. St. 253; Dill v. People, 19 Col. 469; Doord v. Commonwealth, 99 Va. 838; Com. v. Krenger, 17 Pa. 181.

A well considered case, among the many of other jurisdictions on the question under consideration, is that of State v. Dyer, 59 Maine 303. An indictment against the husband and another charged them with using an instrument upon the wife by forcing and inserting it into her womb for the purpose of procuring a miscarriage. The question for decision was whether the wife was a competent witness against the husband. It was held that she could testify: (1) Because the charge was gross personal violence on the person of the wife; (2) that the wife acted under the coercion of the husband; (3) that the intent was to procure the miscarriage of the woman. These facts were sufficient, as held by the court, to bring the case within the exception to the rule of the common law excluding husband and wife as witnesses for or against each other. In discussing the reasons for the exception the court, in part, said:

''The object and purpose of the exception measures the extent of it. In a given case the inquiry must be, what is the nature of the offense charged, and is it one implying personal violence to the wife? If so, she may be a witness, not only to obtain security for herself, but also when he is charged by indictment, with an assault upon

her. . . . The rule of exclusion, it is well known, is based upon the unity in view of the law of husband and wife, and the 'idea that her testimony would tend to destroy domestic peace, and introduce discord, animosity and confusion.' The exceptions which necessity soon forced upon the courts are based primarily on the idea that the protection of the person of the wife from actual violence and assault or cruel treatment by the husband, is of more practical importance than the legal assumption of unity, or the theoretical fears of domestic discord.''

We fully endorse the reasons advanced by the Supreme Court of Maine in the case, *supra,* in support of the right of the wife to testify against the husband when it is sought in a criminal or penal prosecution to bring him to account for an injury wantonly inflicted or threatened to her person, for we believe them in full accord with a salutary public policy, the enforcement of which will have a beneficent effect in protecting the sanctity of the home and happiness of the family. Indeed, any other view of the matter would be contrary to reason and repugnant to the demands of justice.

We do not find that the authorities relied on by counsel for appellee militate against the view we entertain of the law. None of the cases cited in their brief is precisely analogous to the case at bar, in point of fact or as regards the conclusion reached. That of Comth. v. Winfrey, 169 Ky. 650, strongly relied on, though apparently similar in some of its features of fact, did not require a decision of the question of the wife's right to testify. The only question decided in the case on the appeal was as to the right of the Commonwealth's attorney, denied by the trial court, to dismiss by motion an indictment under section 243, Criminal Code, over the defendant's objection; and whether a writ of prohibition would lie to control the action of that court upon such motion. It was held by us that the writ of prohibition did not lie, but as the Commonwealth had taken an appeal from the order of the trial court overruling the motion of its attorney to dismiss the indictment, its action thereon was reviewable on the appeal; and further that such action of the trial court in overruling the motion of the Commonwealth's attorney to dismiss the indictment was error, hence for that reason, and no other, the judgment was reversed.

While comment is made in the opinion upon the claim of counsel, that the marriage of the defendant to the prosecutrix after his indictment for procuring an abortion upon her, had rendered her incompetent to testify against him, it can hardly be claimed that the court by what was said admitted the disqualification of the wife as a witness by her marriage to the defendant. Fairly construed the language used means that if it were true such disqualification of the witness resulted from the marriage, as claimed, that fact could not be urged by the defendant as a ground for defeating the right of the Commonwealth to renew the prosecution against him under another indictment, if the parties should thereafter be divorced. We think it manifest that the court did not intend by the language referred to, to make the opinion conflict with those of Comth. v. Sapp, and Barclay v. Comth., *supra*. At most, what was said in Comth. v. Winfrey was unnecessary to the decision of the question upon which the judgment appealed from was reversed; and this being true, it is to be regarded *obiter dictum*.

It follows from the conclusion we have expressed, that the ruling of the circuit court excluding the testimony of the wife of the appellee as a witness in the instant case, was error. Hence it is so declared, and this opinion certified to that court as the law of the case. The whole court sitting.