## Commonwealth v. Miller.

(Decided May 18, 1926.)

### Appeal from McCracken Circuit Court.

1. False Pretenses—Indictment Charging that Accused Obtained Loan by Misrepresentation in Writing as to his Financial Ability Held Not Demurrable, where it Expressly Negatived Truth of Three of Five Statements Contained in Such Writing (Ky. Stats., Sec. 1213b).—Indictment, charging that accussed obtained loan by misrepresentation in writing as to his financial ability contrary to Ky. Stats., sec. 1213b, held not demurrable, where it expressly negatived truth of three of five statements contained in such writing, since they may have been those on which state relied for conviction.

2. False Pretenses—One Obtaining Loan by Making False Represen- tation in Writing as to Financial Ability Held to Violate Statute Relative to False Pretenses, Though One to Whom Representation was Made could have Ascertained Falsity of Statements (Ky. Stats., Secs. 1213b, 1208).—One who obtained loan by deliberately making false representation in writing as to his financial ability, intending that it should be relied on, held to violate Ky. Stats., sec. 1213b, relative to false pretenses, regardless of whether one to whom representation was made could have ascertaind falsity of such statment; section 1208 being unavailable.

FRANK E. DAUGHERTY, Attorney General; JACK E. FISHER, Commonwealth's Attorney; BRADSHAW & MacDONALD, and W. F. McMURRY, JR., for appellant.

BEN S. ADAMS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellee was indicted under the provisions of section 1213b, Ky. Stats., being chapter 15 of the Acts of 1914. The trial court sustained defendants demurrer to the in- dictment, and from that action the Commonwealth appeals.

The defendant is charged with knowingly making directly a false statement in writing with the intent that it shall be relied on, respecting his financial condition or means or ability to pay as well as that of a firm in which he was at the time interested, for the purpose of pro- curing a loan or credit. It is charged that he was the owner and proprietor of the Miller Motor Company, and

while acting for himself and such company presented a false statement in writing to the Commercial Credit Company of St. Louis signed by the Miller Motor Company by L. E. Miller owner, and that the said Commercial Credit Company relying upon such false statement in writing was deceived and defrauded and led to believe and did believe that the Miller Motor Company so owned by L. E. Miller was in good financial condition, and had the means and ability to pay its debts and obligations, and that the said L. E. Miller the owner thereof was worth in his own name the sum of $25,000.00 net, and that his means and ability to pay his own or the debts of the Miller Motor Company were ample and sufficient, and so believing did loan to the Miller Motor Company a large sum of money the exact amount unknown to the grand jury, and did extend to the Miller Motor Company and the said L. E. Miller credit in a large sum of money to the extent of $16,000.00 for the purchase of automobiles by the Miller Motor Company. That the said false statement in writing, a copy of which is appended to the indictment, was presented to the Commercial Credit Company of St. Louis for the purpose of inducing that company to loan money and extend credit to the Miller Motor Company and L. E. Miller; and that such financial statement so made and signed as above indicated among other things states that the Miller Motor Company owned a "battery station" of the value of $1,500.00, but did not state that one Batzel at the time held a mortgage of record against the same for the sum of $1,000.00 which was at the time unsatisfied; that the statement also falsely says that L. E. Miller was the owner at the time of a house and lot in his own name of the value of $7,-500.00, when in truth and in fact Miller had only a bond for title and had no deed to any lot at the time on which there was a house, and at the time had obligated himself when the house, then being erected upon the lot, was completed, to execute a first mortgage to a bank and a second mortgage to another to cover the greater part of the cost of the building then being erected; that the financial statement was false and untrue in representing that L. E. Miller's individual worth, outside of the business of the Miller Motor Company, was $7,500.00, when in truth and in fact the said L. E. Miller was not worth, outside of the business of the Miller Motor Company, the sum of $7,500.00 or any sum in excess of $1,000.00; that in such

statement the defendant stated and represented himself to be worth $25,000.00 net, when in truth and in fact he at the time was not worth individually or otherwise any sum exceeding $1,000.00; that in such financial statement in writing, after listing the liabilities and the obligations of the Miller Motor Company and of L. E. Miller at $2,-840.00, it is stated and represented that neither he nor the company had any other liabilities, when in truth and in fact he at the time owed for the building of the house referred to upon the lot for which he had a title bond, to L. M. Jones therefor the sum of $4,877.00, for which amount he afterwards executed mortgages upon such house and lot, and that but for such false representations in writing so made by Miller and presented to the Commercial Credit Company and relied upon by it as true, the said company would not have loaned to the Miller Motor Company the sum of $16,000.00 or any other sum, and would not have arranged with a bank to honor and pay to that company or L. E. Miller any drafts drawn upon it by such Miller Motor Company for the payment of automobiles bought by the latter.

The transcript does not disclose the ground upon which the demurrer was sustained, but from appellee's brief we gather it was either upon the ground (1) that the indictment did not specifically negative the alleged false statements which the Commonwealth relied upon for conviction, or (2) that even if the allegations charged were admitted the defendant had committed no offense because the Commercial Credit Company could have by investigation of the records ascertained the truth or falsity of the alleged false statement in writing, and that the statement so made did not come within the statute because it was not calculated to deceive a person of ordinary prudence and discretion.

It is true the indictment did not negative by special averment the alleged false statements with reference to ownership of the battery station or of the house and lot in his own name, but alleged that as to the battery station he failed to state in his statement that there was in existence at the time a $1,000.00 mortgage of record unsatisfied thereon, and as to the ownership of the house and lot it alleged only that he did not at the time have a deed for the house and lot but only a title bond. But it does specifically negative defendant's statement as shown by the financial statement appended to the indictment that L. E. Miller was worth individually, outside of the busi-

ness of the Miller Motor Company, $7,500.00, and specifically avers that he was not then worth more than $1,000.00; it likewise specifically negatives his representation in the financial statement that he was worth $25,-000.00 net, by specially avering that he was not at the time worth exceeding $1,000.00; and it does specifically negative the statement contained in the financial statement that the liabilities of both the Miller Motor Company and L. E. Miller were $2,840.00 only, by averring specifically that at the time he owed $4,877.00 in addition thereto.

In the case of Commonwealth v. Wilson, 190 Ky. 813, the rule is stated that in such indictments it is necessary that there should be specifically negatived such material representations as the prosecution expects to prove false and rely upon for a conviction; but in this case, if we treat the allegations of the indictment as to the battery station and as to the ownership of the house and lot in defendant's own name as mere surplusage, still we have three material averments of false representations set up in the indictment specifically negatived, and it may be that they are the ones upon which the Commonwealth relied for conviction. So that wholly apart from the allegations with reference to the representations about the battery station and the ownership of the house and lot, the indictment states facts showing misrepresentations in writing for the purpose of securing money or credit.

Section 1213b was passed in 1914, and in many respects is essentially different from the then existing act with reference to false pretenses. Section 1208 on that subject, then the only one in force, only provided that if one should by false pretense, statement or token with intention to commit a fraud obtain from another property or other thing the subject of larceny, he should be guilty, and it was not required that the statement or representation should have been in writing; while section 1213b, passed in 1914 and under which this indictment was drawn, contemplates and deals with only false representation or statement made in writing with the intention that it shall be relied upon, and dealing with the financial condition or means or ability of the representor to pay, for the purpose of procuring the delivery of personal property, the payment of cash or the making of a loan or credit.

The last named statute was intended to meet modern business conditions brought about by the rapid means of

communication and the swift methods of transit now in use by business people throughout the country. It was intended to remove the necessity of business people doing business at distant points from many of their customers, inquiring into the financial status of people with whom they did business, and to enable them to solely rely upon statements in writing made by such persons with reference to their financial ability and solvency. A mere statement made by one to a resident of his own locality who has the means of verification at hand, under the old statute was held not calculated to deceive him, if he be a person of ordinary prudence and discretion where the means were at hand by which he might verify the statement.

The last enactment specifically dealing with representations in writing was obviously enacted in the light of modern business conditions, and contemplates that when one in the deliberate act of writing makes a false representation to another with reference to his financial situation or condition, intending the same to be relied upon, such other (in many instances long distances away) may rely upon the same without seeking other sources of information which often are not at hand.

Clearly, therefore, the rule under the old statute that there could be no false pretense where the means of ascertaining the falsity of the statement were at hand, cannot and should not be applied under the operation of this modern statute designed to meet modern conditions.

The judgment is reversed, with directions to overrule the demurrer to the indictment.