## GUY CARGILL v. STATE.

No. A-3874.  Opinion Filed April 23, 1923.
Rehearing Denied Dec. 4, 1923.
(220 Pac. 64.)

(Syllabus.)

1.    **Witnesses—Test of Competency—7 Year Old Prosecuting Witness Competent to Testify in Rape Case.** Section 589, Comp. St. 1921, provides that children under 10 years of age who appear incapable of receiving just impressions of the facts concerning which they are examined, or of relating them truly, shall be incompetent to testify. It follows, therefore, that intelligence, and not age, is the vital criterion. In this case we think the witness was qualified. Whether a witness under the age of 10 years is competent is largely within the discretion of the trial court.

2.    **Statutory Provisions.** Neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other. Section 2699. Comp. St. 1921.

3.    **Witnesses—Wife not Competent Against Husband in Rape Prosecution.** A woman is not a competent witness against her husband in a prosecution against him for rape or assault to commit rape upon a third person, under a statute permitting her to testify in a prosecution for a crime committed by the husband against the wife.

4.    **Constitutional Law—Statute as to Competency of Husband or Wife to Testify not Construed so as to Amount to Judicial Legislation.** To enlarge the scope of the statutory rule permitting the husband or wife to testify against the other, where the offense charged is an offense against the innocent spouse, so as to include every offense remotely or indirectly vexing, humiliating, or distressing the innocent spouse, would be to state the rule too broadly and would amount to judicial legislation. Such a construction would throw the doors wide open for the introduction of evidence by one against the other in any and every case affecting their domestic affairs. In other words, such a construction of the exception to the rule would in a large measure abrogate the rule itself.

5.    **Cases Overruled.** The rule of evidence based on section 2699, Comp. St. 1921, as announced in Hunter v. State, 10 Okla. Cr. 119, 134 Pac. 1134, L. R. A. 1915A, 564, Ann. Cas. 1916A, 612, so far as it is in conflict with the holdings here announced is overruled.

Appeal from District Court, Oklahoma County; Geo. W. Clark, Judge.

Guy Cargill was convicted of rape in the first degree, and he appeals. Reversed and remanded.

Pruiett, Sniggs, Patterson & Morris, for plaintiff in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Guy Cargill, plaintiff in error, here referred to as the defendant, was on September 14, 1920, in the district court of Oklahoma county, convicted of rape in the first degree, and his punishment was fixed at life imprisonment in the state penitentiary. The defendant's cause is now here on appeal, and he seeks to have the judgment of the trial court reversed: First, on account of the reception of alleged incompetent testimony; second, because of erroneous instructions given; third, because of improper conduct of the county attorney in his argument to the jury.

The testimony on the part of the state is of a revolting nature and will not be stated in detail. Briefly, it was shown that defendant went to the woods near his home with his stepdaughter, a child of the age of seven years, to cut some stakes or poles to mend a hog pen, and that while there he ravished the child. The testimony of the abused girl and of her mother, the wife of the defendant, and of a physician, showed that the girl after the assault was in a badly lacerated condition, indicating sexual abuse.

The defendant claimed that the girl fell on one of the poles he had cut and so sustained the injuries shown.

Defendant claims that the child, by reason of her age and want of intelligence, was incapable of giving competent

testimony. This objection was urged in the court below, and after an examination to test her qualifications the trial court found that she was a competent witness. The test made, as it appears in the record, indicates that it was fairly made, and the answers given by this child witness show that she possessed more than the average intelligence of persons of her age. The answers given by her, both in the examination in chief and on cross-examination, indicate a good memory of the incidents related by her, that her impressions were justly stated, and that she understood that she would suffer punishment if she testified falsely. It sometimes happens that the testimony of children is more convincing than that of older persons.

Section 589, Compiled Statutes 1921, provides:

"Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly," shall be incompetent to testify.

It therefore follows that intelligence, and not age, is the vital criterion. Under this rule we think this witness was qualified. Walker v. State, 12 Okla. Cr. 179, 153 Pac. 209. Whether a witness under the age of 10 years is competent to testify is largely within the discretion of the trial court. Darneal v. State, 14 Okla. Cr. 540, 174 Pac. 290, 1 A. L. R. 638.

Susan Cargill, the mother of the abused child, was a material witness, possibly the most damaging witness against the defendant, her husband. Her testimony related to facts not a part of the res gestae and to precedent and subsequent communications with her accused husband. Section 2699, Comp. Stat. 1921, provides:

"Neither husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed one against the other," etc.

In construing statutes similar to the one quoted above, the appellate courts of the different states have arrived at conclusions not in perfect harmony. It has been held in a minority of cases that a sexual offense by one spouse with or against a third person is an offense against the innocent spouse as well as against the state, and that the aggrieved spouse may testify against the other. See notes and annotations, Commonwealth v. Allen, 16 A. L. R. 490 (191 Ky. 624, 231 S. W. 41). We think, however, that the rule as above stated and as announced in the annotations in the Allen Case is too comprehensive and is not fully supported by the cases there cited.

The reasons given by law text-writers and courts why neither a husband nor wife shall in any case be a witness against the other except in a criminal prosecution for a crime committed by one against the other have been stated thus: First, identity of interests; second, the consequent danger of perjury; third, the policy of the law which deems it necessary to guard the security and confidences of private life even at the risk of an occasional failure of justice, and which rejects such evidence because its admission would lead to domestic disunion and unhappiness; and, fourth, because, where a want of domestic tranquility exists, there is danger of punishing one spouse through the hostile testimony of the other.

Since we are construing a statute, we are not so much concerned with the reasons underlying the policy of this rule of evidence as we are in a correct construction of the statute as we find it. In the case of Heacock v. State, 4 Okla. Cr. 606, 112 Pac. 949, it was held that adultery com-

mitted by the husband is a personal injury against the wife. This was based largely on the provisions of our statute (section 1852, Comp. Stat. 1921) providing that a prosecution for adultery must be commenced and carried on by the aggrieved spouse. Thus by statutory enactment adultery is made a crime against the innocent spouse.

The case of Hunter v. State, 10 Okla. Cr. 119, 134 Pac. 1134, L. R. A. 1915A, 564, Ann. Cas. 1916A, 612, was a case where the accused husband was charged and tried with having failed to furnish his child with necessary food and clothing. In this case it was held that the wife of the accused was a competent witness against him, indirectly holding that a violation by the husband of the provisions of section 1855, Comp. Stat. 1921, was a crime against the wife. This statute provides that any parent who willfully omits without lawful excuse to perform any duty imposed upon him by law to furnish necessary food, clothing, shelter, or medical attendance for his child is guilty of a misdemeanor.

In 1915 our Legislature enacted a statute, sections 1856a and 1857, Comp. Stat. 1921, providing for a penalty for wife or child abandonment. This 1915 statute defined a husband's duties to his wife and children, being in some respects analogous to the earlier statute construed by Judge Furman in Hunter v. State, but provided further that in such a case the wife should be a competent witness against the husband. It is fair to assume that if it was necessary to provide specifically by statute that the wife could testify in a case of child abandonment that the preceding section, the one construed in the Hunter Case defining the analogous offense, would require a like modification to permit the wife to testify against the husband. The omission of this statutory provision from section 1855 might be taken as an indication that the ex-

ception should not apply to child abandonment, but that it would apply to criminal neglect of children.

In West v. State, 13 Okla. Cr. 312, 164 Pac. 327, L. R. A. 1917E, 1129, it was held that, in a prosecution against a husband for willful and corrupt perjury in making a false affidavit to obtain a divorce from his wife, the wife is a competent witness for the state. Under such circumstances the wife's rights and interests as such are directly attacked. Through perjury the husband perpetrated a fraud upon the wife, directly affecting and dissolving the marital relation, against her will. This, it would seem, comes clearly within the purview of the statutory exception permitting the wife to testify.

We have seen that adultery is a crime against the marital state by virtue of the statute, and that perjury committed for the purpose of wrongfully breaking up the marriage relation is a crime against the aggrieved spouse, constituting a direct attack upon the conjugal relation. Upon reason and authority bigamy has been held to be a crime against the innocent party, being also a direct interference with the marital rights of the innocent spouse. Schell v. People, 65 Colo. 116, 173 Pac. 1141, L. R. A. 1918F, 954; State v. Hughes, 58 Iowa, 165, 11 N. W. 706; U. S. v. Cutler, 5 Utah, 608, 19 Pac. 145.

There is good reason for holding that bigamy is a direct crime against marital rights. The practice of bigamy is a continuing relation, wholly incompatible with lawful conjugal relations as contemplated by modern society. Ordinarily the reasons applicable to a case of bigamy do not apply to cases of abortion, rape, incest, sodomy, etc. However, there are cases holding that these offenses are crimes against the innocent spouse, coming within the exception, though

the weight of authority seems to be the other way. These degrading crimes are usually committed by sexual degenerates of loose morals and with loose marriage ties. In addition to the other reasons usually urged, the abrogation of the rule in these cases might operate as a fraud against the one accused, even though entirely innocent. An innocent spouse might be charged with the commission of one of these offenses by the other as the easiest way to terminate the marriage relation. By the weight of authority these are crimes against society and common decency, rather than against the marriage state.

In Commonwealth v. Allen, 191 Ky. 624, 231 S. W. 41, 16 A. L. R. 484, it was held that a woman might testify against her husband in a prosecution against him for causing her to miscarry by the forcible use of instruments upon her person, against her will. This, of course, amounted to a direct assault against the wife, and would plainly come within the purview of the exception in our statute as being a crime against the wife. In this case there was personal violence against the wife, the act being done by force and coercion. The rule would have been different if the act had been done at the request of the wife, or if perpetrated upon a third person. Hostetter v. Green, 159 Ky. 611, 167 S. W. 919, L. R. A. 1915C, 870; Commonwealth v. Davis, 169 Ky. 650, 184 S. W. 1121; annotations, 16 A. L. R. 490.

A woman is not a competent witness against her husband in a prosecution against him for rape or assault to commit rape upon a third person, under a statute permitting her to testify in a prosecution for a crime committed by the husband against the wife. The practice of bigamy is a direct interference with and suspension of marital rights of the innocent spouse, but rape does not necessarily so operate. Iowa v. Wilcox, 185 Iowa, 90, 169 N. W. 646, 4 A. L. R. 1066

(rape on stepdaughter); Brock v. State, 44 Tex. Cr. R. 335, 71 S. W. 20, 60 L. R. A. 465, 100 Am. St. Rep. 859. The same may be said of incest, a revolting crime, but not one necessarily incompatible with the continuance of the marriage relation. State v. Burt, 17 S. D. 7, 94 N. W. 409, 62 L. R. A. 172, 106 Am. St. Rep. 759; Compton v. State, 13 Tex. App. 271, 44 Am. Rep. 703; People v. Westbrook, 94 Mich. 629, 54 N. W. 486 (incest with stepdaughter).

We have found no adjudicated case applying this rule of evidence to cases of sodomy, but assume that the rule governing in cases of rape and incest would apply.

The rules of evidence affecting husband and wife, as applied to different sexual crimes, have been reviewed for the purpose only of elucidating these rules properly applicable to rape committed on a stepdaughter, as in this case.

The test at common law was whether the offense amounted to a physical assault upon the innocent spouse. As has been seen, under remedial statutes making the exception to the rule apply to crimes committed one against the other, our state and most other states have enlarged the scope of the exception so as to make it apply, where there is no actual force, to direct infringements upon the marital rights of the other spouse.

To enlarge the scope of the exception to include every offense remotely or indirectly vexing, humiliating, or distressing the innocent spouse would be to make it too broad, and would amount to judicial legislation, throwing the doors wide open for the introduction of evidence by one against the other in any and every case affecting their domestic affairs. In other words, such a construction of the exception to the rule would in a large measure abrogate the rule itself.

As illustrating how reluctant the courts are to depart from the common-law rule, in the case of Bassett v. United States, 137 U. S. 496, 11 Sup. Ct. 165, 34 L. Ed. 762, Mr. Justice Brewer, in construing a statute similar to ours in a Utah case wherein the accused was indicted for polygamy, said:

"We do not doubt the power of the Legislature to change this ancient and well-supported rule; but an intention to make such a change should not lightly be imputed. It cannot be assumed that it is indifferent to sacred things, or that it means to lower the holy relations of husband and wife to the material plane of simple contract. So, before any departure from the rule affirmed through the ages of the common law—a rule having its solid foundation in the best interests of society—can be adjudged, the language declaring the legislative will should be so clear as to prevent doubt as to its intent and limit. * * * The clause in the Civil Code is negative, and declares that the exception of the incompetency of wife or husband as a witness against the other does not apply to a criminal action or proceeding for a crime committed by one against the other. Is polygamy such a crime against the wife? That it is no wrong upon her person is conceded; and the common-law exception to the silence upon the lips of husband and wife was only broken, as we have noticed, in cases of assault of one upon the other. That it is humiliation and outrage to her is evident. If that is the test, what limit is imposed? Is the wife not humiliated, is not her respect and love for her husband outraged and betrayed, when he forgets his integrity as a man and violates any human or divine enactment? Is she less sensitive, is she less humiliated, when he commits murder, or robbery, or forgery, than when he commits polygamy or adultery? A true wife feels keenly any wrong of her husband, and her loyalty and reverence are wounded and humiliated by such conduct. But the question presented by this statute is not how much she feels or suffers, but whether the crime is one against her."

For the reasons stated, we are constrained to take the middle ground. The rule that the injury must amount to a physical wrong upon the person is too narrow; and the rule that any offense remotely or indirectly affecting domestic harmony comes within the exception is too broad. The better rule is that, when an offense directly attacks or directly and vitally impairs the conjugal relation, it comes within the exception to the statute that one shall not be a witness against the other except in a criminal prosecution for a crime committed one against the other. In this sense the commission of rape by a husband upon a third person is not a crime against the wife within the meaning of our statute. And the rule announced by Judge Furman in the 'Hunter Case, supra, is too comprehensive. In that opinion Judge Furman criticizes the reasons and conclusions reached by Mr. Justice Brewer and the United States Supreme Court in the Bassett Case and adopts the reasons and conclusions of Prof. Wigmore in his admirable and profound treatise on Evidence, § 2228 et seq. The inadequacy of the reasons for the rule and its exceptions, as stated by Wigmore, may be sound, but we are called to look beyond these reasons. We are here called upon, not to determine the wisdom of the law, but to determine what the law is. If the law is unwise, the Legislature can easily modify it. So far as possible, we are bound to follow the law as declared by the highest courts of the land, rather than that of text-writers, however eminent. The rule of evidence announced in the Hunter Case is therefore reversed, so far as in conflict with the rule announced herein.

Whether or not the defendant is guilty, we hold in this case that the wife was incompetent to testify against her husband, and since her testimony related to important facts in issue, as well as to communications made to her by her

husband, the case must be reversed and remanded; and it is so ordered.

The warden of the penitentiary of McAlester, upon proper demand at the penitentiary, will deliver the defendant to the sheriff of Oklahoma county, who will hold him in custody until otherwise ordered according to law.

MATSON, P. J., and DOYLE, J., concur.