457 P.2d 256

STATE of Arizona, Appellee,

v.

Eugene L. CROW, Appellant.

No. 1838.

Supreme Court of Arizona.

In Banc.

July 16, 1969.

**580**

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Lewis, Roca, Beauchamp & Linton, by, Robert A. Jensen, Wood & Platt, by, William E. Platt, Jr., Phoenix, for appellant.

McFARLAND, Justice:

Eugene L. Crow, hereinafter referred to as defendant, was charged with and convicted of two counts of first-degree murder —the first on Darwin Parks, his father-in-law, and the second on David Parks, his brother-in-law. He was sentenced on each count to life imprisonment to run concurrently. He was charged and convicted of a third count of assault with intent to commit murder upon his wife, Brenda Parks Crow, for which he was sentenced to serve not less than ten years nor more than twelve years at the Arizona State Penitentiary, to run consecutively with the two murder counts. From the judgment and sentence of the court he appeals.

Defendant was married to Brenda Parks in October 1959. After living in California for a time they returned to Casa Grande, Arizona, in 1963, where defendant was employed at the local school. The Crows had one child, Sandra, who was six years of age at the time of the trial. They lived on a small farm on the outskirts of Casa Grande. Marital troubles developed in 1966, and on November 3d they separated. Defendant remained on the farm, and Brenda and the daughter lived with her parents. From the date of their separation until November 15th defendant practically every day tried to persuade his wife to return to him. On Tuesday, the 15th, they met at the farm, and, using two notes one of which purported to be a last will and testament, defendant threatened to take both their lives, as a result of which Brenda agreed to a reconciliation which never took place. From that date until the 19th—the date of the shooting—there were various meetings between defendant and his wife which resulted in the defendant's telling Brenda that he would not contest a divorce and agreed that she could come to the farm on Saturday to pick up her possessions, but that she was not to bring Sandra with her, as it would upset the child.

On Saturday morning about nine a. m. the defendant went to the Parks' home where he was met by his daughter whom he kissed, and talked briefly with Brenda. He had previously received a telephone call that some of the cattle had strayed, and he was on his way to round them up, but promised to return to the Parks' residence with Sandra's horse after he had rounded up the cattle at the farm. He returned the horse to Sandra later, and exchanged a few

friendly words with Darwin Parks. He thereafter returned to the Parks' residence where he met David Parks, Brenda's brother, who was unexpectedly home from college. It was at that time that he told Brenda that they could come over and pick up her possessions.

After he returned to the farm, defendant watched television, opened a can of beer, and awaited the arrival of his wife and the Parkses. According to his testimony, he remembered a gun which he had borrowed from his father to kill a dog. The gun was in a drawer with some of Brenda's clothing in a closet, and, in order to avoid trouble, he took it and placed it in a drawer of the television set.

When Brenda arrived, accompanied by her father, brother David, her mother Bonnie and daughter Sandra, he protested Sandra's presence, whereupon provocation between Darwin and him started. Darwin struck the can of beer defendant was holding from his hand, and told him "If you mouth off I will knock your head off!" He also chastized Brenda for bringing Sandra. After some words Sandra was taken home by Brenda's mother. The facts which led up to the shooting are in conflict. Defendant testified that while the two women were at the car loading possessions Darwin and David began removing rods and drapery from the windows, and when defendant protested Darwin whirled and knocked him to the floor and started kicking him in the back and face. David joined in the fight, at which time defendant grabbed the gun from the drawer of the television set, and killed both of them when they again rushed him.

Defendant then ran outside and backed his car into the car in which Brenda and her mother Bonnie were driving away. The impact knocked the car in which Brenda and Bonnie were riding into a ditch. Defendant grabbed Brenda from the car and started beating her. Brenda's mother

drove to a neighbor's house to call the police. Bonnie and Brenda testified that before the first shot was fired they had just emerged from the house, and that there had been no trouble before the first shot.

■ It is first contended by defendant that the court erred in excluding from the jury six persons who stated that they could not impose the death penalty under any circumstances—that the exclusion of those persons from the jury violated the rights of the defendant guaranteed under the Constitution of the United States, under the equal-protection clause of the Fourteenth Amendment and the Sixth Amendment, as applied to the due-process clause of the Fourteenth Amendment. Defendant cites Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, as supporting his position. We quote from the footnote, p. 1777, wherein it is stated:

"We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt*. Nor does the decision in this case affect the validity of any sentence *other* than one of death. *Nor, finally, does today's holding render invalid the conviction, as opposed to the sentence,* in this or any other case." [Some emphasis added.]

In Witherspoon, supra, and also in Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, the United States Supreme Court held that Witherspoon only applies where the death penalty is imposed on the accused. We so held in State v. Madden, 104 Ariz. 111, 449 P.2d 39.

The next question presented is of a much more serious nature. Defendant contends that the court erred in not granting the motion to sever the murder counts from the assault-with-intent-to-commit-murder count; defendant further contends that the court erred in permitting the wife to testify against the husband as to the murder counts. Defendant argues that he was compelled to take the stand, in view of his self-defense plea in the murder counts, and that the joinder forced him to also testify as to the assault count which he would not have done but for the joinder of counts.

Brenda testified in regard to the conversation which occurred when she and the Parkses had gone to get her possessions at the home. She testified that defendant had stated, in referring to Sandra:

"I told you that if you brought her out here you weren't going to get anything, so you might as well go on back."

Also that she said:

"A   I told him that I was, that I am sorry, I had forgotten, and that I would ask mother to take her back into town.

"Q   And what happened then, tell us the whole conversation that took place then?

"A   When Gene came out of the door he was holding a beer can in his right hand. And he said, 'I told you if you brought her out here you weren't going to get a thing.' And Daddy walked over and he slapped the beer can out of Gene's hand and said, 'I am tired of all this. You two have been arguing for two weeks now, and it's gotten now to where—you asked us to come out and get the things, and if you don't want them, now you haven't got a thing we want in that house. Do you want us to come in and get the things or not?'

"Q   What did Gene respond to this?

"A   He said, 'I told that little slut if she brought Sandra out here she was not getting a thing.' "

She then stated that her mother took Sandra back to her grandmother's.

There was also testimony in regard to the threatening of Brenda's life, and the writing of the so-called will and testament and the suicide note which read:

"I'm sorry this had to happen, but I lost my wife and kids once before and I just can't take it again, and I'm not crazy. I just can't live without my family."

Defendant contends that this and other testimony was highly damaging to him in the trial of the murder counts, and was not admissible, under § 13–1802, A.R.S. [1], and that an instruction to the jury not to consider this evidence in the trial of the murder counts was not sufficient in that a jury would not be able to do so in the determination of the guilt or innocence of a defendant under such facts. Rule 128, Rules of Crim. Proc., 17 A.R.S., which permits separate trials, provides:

"RULE 128.   Charging two or more offenses or same offense in different counts; consolidation; * * *

"*   *   *   *   *   *

"B.   * * * The court in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indict-

---

1.   § 13–1802.   Anti-marital fact privilege; other privileged communications

A person shall not be examined as a witness in the following cases:

1.   A husband for or against his wife without her consent, nor a wife for or against her husband without his consent.

2.   A husband or wife, during the marriage or afterwards, without consent of the other, as to any communication made by one to the other during the marriage. This exception does not apply in a criminal action or proceeding for a crime committed by the husband against the wife, or by the wife against the husband, nor in a criminal action or proceeding against the husband for abandonment, failure to support or provide for or failure or neglect to furnish the necessities of life to the wife or the minor children. Either spouse may, at his or her request, but not otherwise, be examined as a witness fo.. or against the other in a prosecution for bigamy or adultery, committed by either spouse, or for rape, seduction, the crime against nature or any similar offense, committed by the husband.

ment or information be tried separately, or divided into two or more groups and each of the groups tried separately."

Under this rule the court, in its discretion, must determine whether the trial of two or more counts jointly is prejudicial to a defendant; and, if so found, the court must order that they be tried separately. The contention of the defendant that the court should have severed the trial of the murder counts from that of the assault-with-intent-to-murder count upon Brenda was based upon the argument that Brenda was not entitled to testify against the husband on the murder counts. If this testimony was admissible in the trial on the murder counts then the defendant's contention that it was prejudicial error not to grant the separate trials on this ground fails. This question hinges on whether the testimony of the wife against the defendant in the trial on the murder counts is admissible under the exception permitting a husband or wife to testify for "a crime committed by the husband against the wife, or by the wife against the husband."

In Zumwalt v. State, 16 Ariz. 82, 141 P. 710, we stated:

"The Legislature of this state has declared it to be the policy of the law to encourage confidence in the marital relation, and to preserve that relation inviolate, and therefore it has said that a husband cannot be examined as a witness for or against his wife, without her consent, nor a wife for or against her husband, without his consent; * * *."

This rule originated in the common law. See 58 Am.Jur. 124:

"§ 175: Generally.—It is a common-law rule of great antiquity that neither party to a marriage can be a witness in favor of or against the other, in a suit to which the other is a party, or has a direct or immediate interest, save in a few exceptional cases where their testimony is admitted on grounds of necessity. Under the common law, which in the absence of statutory modification generally continues in full force, neither husband nor wife is a competent witness in a criminal prosecution against the other unless the crime charged is an offense against the person of the spouse testifying. This rule was based partly on the consideration of public policy, the courts being reluctant to sanction any doctrine tending to promote domestic strife, partly on the view that a husband or wife in many instances, by reason of his or her personal interest in the welfare of the other, would color the facts testified to, and partly on the theory that a husband and wife are but one person."

This rule has generally been incorporated in the statute of the various states, and the exceptions to the rule are different in the different states. The exception of the disability of the wife to testify against her husband under common law was the crime committed against her person. Some of the courts, in interpreting and applying the statutory interpretation with reference to crimes against a spouse, have displayed a reluctance to depart from the common-law rule and to give the words "crime against a spouse" an extended meaning beyond that of the common law, and have held that the statutory exception is merely declaratory of the common law. 58 Am.Jur., Witnesses, page 135. However, other courts have characterized this view as too narrow, and give it a more liberal construction on the theory that the elimination of the words "against the person" was intended to liberalize the construction of the words "crime against."

The question is, did the legislature contemplate that only crimes which physically injure the spouse personally would fall within the meaning of the expression "crime against the other spouse"? Or, did it intend, in departing from the holding under the common-law term of crimes against the "person" of the other spouse, to broaden the crime to include any crime in which there was a personal wrong against the other spouse as a result of the commission of the crime?

In Chamberlain v. State [Wyoming], 348 P.2d 280, in passing upon the question of

whether the wife was a competent witness against a husband, in a case in which the husband was charged with statutory rape against his stepdaughter, the court said:

" * * * Also when asked by defense counsel if there was any question in her mind that her husband had carnal knowledge of the daughter, she replied unequivocally, 'He absolutely did'.

"Section 1–142, W.S.1957, reads as follows:

" 'In no case shall the husband or wife be a witness against the other, except in criminal proceedings for a crime committed by one against the other, or in a civil action or proceeding by one or against the other, or an action brought by the husband for criminal conversation with or seduction of his wife, or in an action brought by either husband or wife for the alienation of the other's affections; but they may in all civil and criminal cases be witnesses for each other the same as though the marital relation did not exist.'

"The only other statute we have which touches the subject is found in § 1–139, W.S.1957, formerly § 3–2602, W.C.S.1945, the applicable portion of which is as follows:

" 'The following persons shall not testify in certain respects:

* * * * * *

" '3. Husband or wife, except as provided in section 3681 [§ 1–142]. * * *'

"The wording of the governing statute, like that of similar statutes in many other jurisdictions, needs interpretation. Legalistically speaking, a crime is never 'committed by one against the other'. Crimes are committed against the state. Offenses against an individual are civil wrongs. See Wilkinson v. People, 86 Colo. 406, 282 P. 257; Dill v. People, 19 Colo. 469, 36 P. 229, 41 Am. St.Rep. 254. With this distinction in mind, are we to interpret the word 'crime' to mean 'wrong' in the context where in it is used? If it is logical to conclude the statute permits a wife to testify when she suffers wrong, even though she is not the physical victim of a criminal act, then the admission of her testimony in this case was not error. So we inquire what, if any, wrong did the mother suffer stemming from the rape of her daughter.

* * * * * *

"If all our legislature intended was simply to declare the common law exception of 'cases involving corporal violence', it could unmistakably have done so by using those words. That it intended something more is made plain because the legislature used the broader phrase 'crimes against the other'. A 'crime' against the other, in legislative understanding, means, we think, as does Wigmore, nothing more nor less than a 'wrong' against the other. Yet, as was suggested in Cargill v. State, 25 Okl.Cr. 314, 220 P. 64, 67, 35 A.L.R. 133, a middle ground might well be taken. In that case the court said:

" ' * * * The rule that the injury must amount to a physical wrong upon the person is too narrow; and the rule that any offense remotely or indirectly affecting domestic harmony comes within the exception is too broad. The better rule is that, when an offense directly attacks or directly and vitally impairs the conjugal relation, it comes within the exception to the statute that one shall not be a witness against the other except in a criminal prosecution for a crime committed one against the other. In this sense the commission of rape by a husband upon a third person is not a crime against the wife within the meaning of our statute. * * *'

"With this statement we can agree. However, where the rape is of the child of the wife, that offense is within the 'better rule' for it not only vitally impairs the conjugal relation but comes specifically within the exception named in our statute, because it has caused a special wrong to the wife and has 'particularly and directly' affected her in a manner other than that suffered by the public in general.

"The criminal violation of her minor child undoubtedly caused as great or, more, likely, even greater pain and suffering to the mother than would have been caused by any act of physical violence inflicted upon the

wife's own person. We will not say that the degree of mental misery to the wife in this case, which was occasioned by the vicious and depraved act of her husband, allegedly committed just out of her immediate presence, with its consequences paraded in front of her very eyes, was a lesser wrong than any physical wrong inflicted upon her own body, but the covering quality of our legislative exception lies in the special, particular and personal nature of the wrong to the mother.

"If seeking to follow the 'spirit' of legislative purpose means anything, and if we would not kill the spirit of the act by a too specious adherence to its letter, we must hold, as we do, that the crime for which the defendant was prosecuted was one of such special wrong and such a personal offense against his wife as permitted her to testify against him.

"In 8 Wigmore on Evidence, 3d ed., it is stated in § 2239, p. 258:

" '* * * By a liberal view, *any injury to a spouse's child* is a wrong to the spouse, and his or her testimony becomes admissible against the other.

" 'At common law, in the early practice, the notion of an injury to the wife was not regarded as including much more than those corporal brutalities which satisfied most gross and elementary conceptions of wrong. But as times have gone on, more refined distinctions have been countenanced; especially under the statutory exceptions for "crimes against the other", it has become possible for the Courts to take a broader view *for sexual offenses by the spouse with a third person.'* (Emphasis is that of Wigmore.)"

█ The Arizona statute provides an additional exception in regard to rape, but this exception was not contained in the Wyoming statute. The principles of law as set forth in Chamberlain, supra, are applicable in the instant case. That principle is to allow the testimony in all cases in which the crime committed *so closely touches or affects the other spouse as to render the reason for the rule—promotion of marital peace and apprehension of marital dissension—inapplicable.*

As stated in Wigmore on Evidence, § 2239, Vol. VIII:

"* * * In modern statutes the spirit of the exception has usually been invoked to establish the exception for both husband and wife in all causes involving a 'crime against the other' or a 'personal wrong' (statutes collected supra § 488).

"But before noting the extent of this exception in detail, it is worth while to observe that the common law cases and the statutory rules applying this exception are also equally open to explanation as instances in which the very reason of the privilege—at least the reason most frequently advanced (§ 2228 supra)—is lacking. That is to say, if the promotion of marital peace, and the apprehension of marital dissension, are the ultimate ground of the privilege, it is an over-generous assumption that the wife who has been beaten, poisoned or deserted is still on such terms of delicate good feeling with her spouse that her testimony must not be enforced lest the iridescent halo of peace be dispelled by the breath of disparaging testimony. And if there were, conceivably, any such peace, would it be a peace such as the law could desire to protect? Could it be any other peace than that which the tyrant secures for himself by oppression? And could the law pretend to regard the effect produced by a wife's testimony in her own redress as being worth consideration on behalf of a husband who has already grossly violated his marital duties? If there had been any reason at all for the privilege, that reason surely fell away in such cases. The common lawyers, more creditably to themselves in point of consistency as well as humanity, might better have placed these cases upon this ground instead of upon that of necessity. It is satisfactory to find that this reasoning has by some judges been appealed to for that purpose.

"In view of the unsettled extent of the exception in the orthodox common law

and of the broad possibilities of the principle last mentioned, and also by reason of the frequent statutory enlargement of the exception, there has been a decided variation in judicial rulings upon specific cases. Moreover, there has too often been exhibited a narrow illiberality in not seizing the opportunities for carrying out this exception to its widest scope of principle."

Colorado is another state which has adopted a broader interpretation of a similar statute. In O'Loughlin v. People, 90 Colo. 368, 10 P.2d 543, 82 A.L.R. 622, the court held that a husband could testify against his wife for the murder of her stepdaughter under a statute which provided:

"* * * A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor shall either during the marriage or afterward be, without the consent of the other, examined as to any communications made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

The court, in passing upon this question, stated:

"The reason for the exclusion of such testimony is expressly stated in the statute. The status of husband and wife is one of those 'particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate.' When a spouse is charged with a crime involving a violation of the marital status such as the heinous crime here disclosed, the reason for the rule and its protection are annihilated. If rape of a stepdaughter is an 'outrage upon nature in its dearest and tenderest relations as well as a crime against humanity itself' and constitutes a crime 'committed by one spouse against the other,' it must necessarily and logically follow that the murder by one spouse of the other's child is also a crime committed by one spouse against the other. It may well be said that in this determination we have departed from the rule announced in Bassett v. United States, 137 U.S. 496, 11 S.Ct. 165, 34 L.Ed. 762, followed in many jurisdictions, holding that one spouse may testify against the other only in cases involving personal violence one against the other. After an examination of the many and conflicting decisions in other jurisdictions, we are satisfied that not only do reason and justice demand the broader interpretation of the statute above indicated, but also that our Legislature intended that such construction should be followed."

The testimony clearly shows that the reasons for not permitting a wife to testify against her husband are not present in the instant case because it had already been agreed that the marital relationship would be terminated. Brenda and her daughter were living with her parents and defendant had agreed to a divorce. Her father and brother had gone to assist in getting Brenda's things to take them home. They were helping her in getting her belongings at the time of the shooting. So, we are confronted with the question whether the killing of the wife's father and brother under these circumstances was a crime committed by the husband against the wife. We feel there is no distinction between the principle of law involved in this case and that enunciated in O'Loughlin v. People, supra, and in Chamberlain v. State, supra, holding that a crime committed against the spouse's child was a crime committed against the other spouse.

■■ We therefore hold that the testimony of Brenda was admissible against her husband in the murder charges, and for this reason the court did not abuse its discretion in refusing to grant a separate trial of the murder charges from that of the assault-with-intent-to-commit-murder charge on this ground.

■■ However, the defendant contends that it was prejudicial error not to sever the trial on counts I and II from count III

for the reason that he states that he was forced "to take the stand on count III, contrary to the Fifth Amendment." Defendant cites Meade v. State [Florida], 85 So. 2d 613, 59 A.L.R.2d 835, as supporting his position. However, the holding of the court in the Meade case was based upon the consolidation of two murder charges in which the defendant killed his victims with different instruments and in different ways. The court stated:

"* * * Conceivably elements peculiar to one homicide would not appertain to the other. The motive in one might not apply to the other. * * *"

Such a situation did not exist in the instant case. The acts in the crime of killing the father and the brother were related to the charge of assault with intent to murder the wife. Counsel for the defendant contends that "the joinder of the counts embarrassed and confounded his defense and was therefore prejudicial within the meaning of the Rule 128 (B)."

We do not agree that the defendant was prejudiced in defense of count III by taking the stand. He had pleaded temporary insanity. In his testimony he described the fight between himself and the decedents. Then the testimony is as follows:

"Q  Then what happened?

"A  And then I just blacked out. I don't remember then.

"Q  Gene, do you remember anything from that point until—what did you next remember from that point?

"A  I remember seeing a gun stuck in my face and someone saying, 'I will kill you if you don't turn her loose.' I know I had my wife between my legs, and that is the last I remember until I woke up in the hospital."

The latter testimony was evidently for the purpose of supporting his plea of temporary insanity. This testimony could not have prejudiced his defense of temporary insanity. As a matter of fact, it supported his defense. We are therefore of the opinion that his rights were not prejudiced as to Count III by his having taken the stand.

The substance of defendant's argument in his brief is that he was compelled to take the stand in his self-defense as to counts I and II—that he was denied the guarantee of the Fifth Amendment to the United States Constitution because this compelled him to take the stand as to count III. In no place does he show where he was prejudiced in his defense of count III by having taken the stand. If the court accepted this line of argument it would in effect prevent a joinder of counts, because defendant could always say that he had the right to take the stand as to one count but had the equal right not to take the stand as to another count. For the court to err in refusing separate trials a defendant must show prejudice. Commonwealth of Massachusetts v. Slavski, 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281. No prejudice was shown in the instant case.

Defendant next contends that the court erred in not directing a verdict of not guilty as to murder in the first degree. He claims there was no evidence upon which the jury could base a first-degree murder verdict. In his argument he stated that Brenda's testimony of the confrontation on November 15th was not admissible. We do not agree with this contention. It is a part of the difficulties leading up to the murders. In State v. Bearden, 99 Ariz. 1, 405 P.2d 885, we held:

"We are only concerned with whether there is substantial evidence in support of the verdict. State v. Rivera, 94 Ariz. 45, 50, 381 P.2d 584. Reversible error occurs where there is a complete absence of probative facts to support the conclusion. State v. Mahan, 92 Ariz. 271, 272, 376 P.2d 132; State v. Milton, 85 Ariz. 69, 331 P.2d 846. When we consider whether the verdict is contrary to the evidence we do not decide whether we would reach the same conclusion as the jury. Rather, we decide whether there is competent evidence to support the conclusion found or, alternatively, whether the verdict was found without evidence from passion, prejudice, or other improper motive. Quong Yu v. Territory of Arizona,

12 Ariz. 183, 186, 100 P. 462. Evidence is not insubstantial simply because the testimony is conflicting or reasonable persons may draw different conclusions therefrom. Macias v. State, 39 Ariz. 303, 307, 6 P.2d 423. Substantial evidence means more than a scintilla and is such proof as a reasonable mind would employ to support the conclusion reached. Henzel v. Cameron, 228 Or. 452, 365 P. 2d 498, 503. It is of a character which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. Grange v. Finlay, 58 Wash.2d 528, 364 P.2d 234, 235. If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue then such evidence must be considered as substantial. Smith v. Schumacker, 30 Cal.App.2d 251, 85 P.2d 967, 972; Davis v. Hartley, 69 N.M. 91, 364 P.2d 349, 351."

With the testimony of Brenda in the instant case, together with the other testimony, there was sufficient evidence for the jury to find defendant guilty of first-degree murder.

Defendant further states that this Court should reconsider the decision that a defendant cannot be shown unable to form a requisite intent, held in State v. Schantz, 98 Ariz. 200, 403 P.2d 521, and should hold that the requested instruction in this regard should have been given. We see no reason for departing from our previous holding in this regard.

 Defendant, in his reply brief, calls attention to the sentence of the court on the assault-with-intent-to-murder charge which was for not less than ten nor more than twelve years to run consecutively with the sentences for murder under counts I and II which ran concurrently and which were for life. In State v. Howland, 103 Ariz. 250, 439 P.2d 821, we held that in a case where a defendant who received a sentence of not less than twenty-five years to life in a penitentiary, and a second sentence for twenty-five years to life to run consecutively, the second sentence had no definite starting date, and therefore, under § 13–1652, A.R.S., would have to run from date of delivery to the Arizona State Prison. For the same reason we hold that the sentence of not less than ten years nor more than twelve years on the assault-with-intent-to-murder charge started on the date of delivery of defendant to the Arizona State Penitentiary.

Judgment as modified affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and HAYS, JJ., concur.