IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

─────────────

**PHOENIX CITY PROSECUTOR,**
*Petitioner/Appellant,*

*V.*

**THE HONORABLE LAURA LOWERY,**
*Respondent Judge,*

**CLAUDETTE CRAIG,**
*Respondent/Real Party in Interest.*

─────────────

No. CV-18-0101-PR
Filed December 3, 2018

─────────────

Special Action from the City of Phoenix Municipal Court
The Honorable Laura Lowery
No. 100050574
**REVERSED AND REMANDED**

Appeal from the Superior Court in Maricopa County
The Honorable Michael D. Gordon, Judge
No. LC2016-000472
**VACATED**

Opinion of the Court of Appeals, Division One
244 Ariz. 308 (App. 2018)
**VACATED**

─────────────

COUNSEL:

Amy B. Offenberg (argued), Assistant Phoenix City Prosecutor, Phoenix, Attorney for Phoenix City Prosecutor

Tracey Westerhausen, Lawrence I. Kazan, Gregory M. Zamora (argued), Debus, Kazan & Westerhausen, Ltd., Phoenix, Attorneys for Claudette Craig

Bruce Washburn, Scottsdale City Attorney, Ken Flint, Assistant City Prosecutor, Scottsdale, Attorneys for Amicus Curiae City of Scottsdale

Mikel Steinfeld (argued), Maricopa County Public Defender's Office, Phoenix, Attorney for Amicus Curiae Arizona Attorneys for Criminal Justice

_____

JUSTICE GOULD authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICES PELANDER, TIMMER, BOLICK, and LOPEZ and JUDGE EPPICH* joined.

_____

JUSTICE GOULD, opinion of the Court:

**¶1**        In this case, we address the crime exception to the anti-marital fact privilege.  A.R.S. § 13-4062(1).  We hold that when a defendant commits a crime against his or her spouse and is charged for that crime, the crime exception to the anti-marital fact privilege allows the witness-spouse to testify regarding not only that charge, but also any charges arising from the same unitary event.

**I.**

**¶2**        The City of Phoenix ("the City") alleges that H.C., the husband of Real Party in Interest Claudette Craig, called the police to report that Craig had been drinking and was attempting to leave their residence. H.C. tried to prevent Craig from driving by parking one of their cars behind her mini-van.  Craig backed into the parked car, damaging both vehicles, which were jointly-owned by H.C. and Craig.  Craig was charged with one count of criminal damage, a domestic violence offense under A.R.S. §§ 13-1602 and -3601(A), and three counts of driving under the influence ("DUI") under A.R.S. §§ 28-1381(A)(1) ("impaired to the slightest

_____

* Vice Chief Justice Robert M. Brutinel has recused himself from this case. Pursuant to article 6, section 3, of the Arizona Constitution, the Honorable Karl C. Eppich, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

degree"), -1381(A)(2) (blood "alcohol concentration of 0.08 or more"), and -1382(A)(1) ("extreme influence of intoxicating liquor").

¶3        Before trial, Craig moved to preclude H.C. from testifying about the DUI charges and to sever those charges from the criminal damage charge.  Both motions were based on Craig's invocation of the anti-marital fact privilege.  The municipal court granted Craig's motions.

¶4        The City petitioned the superior court for special action relief, arguing that H.C. could testify about the DUI charges based on the crime exception to the anti-marital fact privilege.  *See* § 13-4062(1).  The superior court accepted review but denied relief.  The court of appeals affirmed, holding that severance was proper because the anti-marital fact privilege precluded H.C. from testifying about the DUI charges.  *Phx. City Prosecutor v. Lowery*, 244 Ariz. 308, 310 ¶ 1 (App. 2018).

¶5        We granted review because the scope of the anti-marital fact privilege and the crime exception are recurring issues of statewide importance.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶6        We review the municipal court's ruling on the applicability of the anti-marital fact privilege for an abuse of discretion.  *See State v. Whitaker*, 112 Ariz. 537, 542 (1975); *see also State v. Cooperman*, 232 Ariz. 347, 349 ¶ 7 (2013).  "An error of law constitutes an abuse of discretion."  *State v. Cheatham*, 240 Ariz. 1, 2 ¶ 6 (2016).  We interpret statutes de novo.  *State v. Boyston*, 231 Ariz. 539, 543 ¶ 14 (2013).

### A.

¶7        In Arizona, "[a] person shall not be examined as a witness" in the case of "[a] husband for or against his wife without her consent, nor a wife for or against her husband without his consent, as to events occurring during the marriage."  § 13-4062(1).  This testimonial privilege, known as the anti-marital fact privilege, enables a defendant-spouse in a criminal proceeding "to prevent the other spouse from testifying."  *Blazek v. Superior Court*, 177 Ariz. 535, 538 (App. 1994).[1]

---

[1] Section 13-4062(1) also contains a second privilege, referred to as the marital communications privilege, that "protects confidential

¶8	The anti-marital fact privilege, though rooted in common law, has existed in Arizona in some statutory form since before statehood. *State v. Crow*, 104 Ariz. 579, 583 (1969), *overruled in part on other grounds by State v. Burchett*, 107 Ariz. 185 (1971); *see also* Rev. Stat. Ariz. Territory, Penal Code § 1111 (1901); *Trammel v. United States*, 445 U.S. 40, 43–45 (1980) (noting the "ancient roots" of the anti-marital fact privilege in the early common law). The privilege is grounded on the policy that precluding spouses from testifying against each other promotes marital peace and harmony. *Crow*, 104 Ariz. at 585; *see also Trammel*, 445 U.S. at 44.

¶9	In practice, however, the privilege excludes relevant evidence and presents an obstacle to the truth-seeking goal of the justice system. *See Whitaker*, 112 Ariz. at 541–42 (explaining that allowing a spouse's testimony better promotes truth-seeking). Thus, as with other privileges, courts have narrowly construed the privilege. *Cf. Trammel*, 445 U.S. at 50 ("Testimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to every man's evidence. As such, they must be strictly construed." (first alteration in original) (internal quotation marks and citations omitted)); *State v. Drury*, 110 Ariz. 447, 454 (1974) (stating that the marital communications privilege poses "an obstacle to the pursuit of truth" and "it should be limited rather than expanded"); *Indus. Comm'n v. Superior Court*, 122 Ariz. 374, 375 (1979) (holding that "statutes creating evidentiary privileges are strictly construed").

**B.**

¶10	There are several exceptions to the anti-marital fact privilege. *See, e.g.*, § 13-4062(1) (stating that "[e]ither spouse" may "request[] to testify" as to "bigamy or adultery, committed by either spouse, or for sexual assault committed by the husband" or any of the serious offenses listed in A.R.S. § 13-706(F)(1)). Here, the City claims the "crime exception" applies to H.C.'s testimony.

1.

¶11	The crime exception provides that a spouse may testify "in a criminal action or proceeding for a crime committed by the husband against the wife, or by the wife against the husband." § 13-4062(1). This exception, like the privilege itself, is a "longstanding one at common law." *Trammel*, 445 U.S. at 46 n.7.

---

communications made between spouses while they are married." *Blazek*, 177 Ariz. at 538. Because Craig has not invoked the marital communications privilege, we do not address it here.

¶12    The crime exception, by its terms, applies to any "crime" committed by one spouse against the other spouse. *See Bilke v. State*, 206 Ariz. 462, 464 ¶ 11 (2003) (stating that in construing a statute, we look to the plain language of the statute, giving effect to every word and phrase, and assigning to each word its plain and common meaning). It is not limited to crimes where one spouse physically injures or threatens the other spouse. *See Crow*, 104 Ariz. at 583–84 (holding that the crime exception could be applied to crimes against a spouse's family, and was not limited to crimes in which a defendant physically injured the other spouse); *see also Trammel*, 445 U.S. at 46 n.7 (noting that the crime exception "has been expanded . . . to include crimes against the spouse's property . . . and in recent years crimes against children of either spouse" (citing *Herman v. United States*, 220 F.2d 219, 226 (4th Cir. 1955) (property crimes), and *United States v. Allery*, 526 F.2d 1362 (8th Cir. 1975) (crimes against children))).

2.

¶13    We have also applied the crime exception to charges arising out of the same unitary event as the crime committed against the spouse. For example, in *Crow*, the defendant's estranged wife arrived at his home with her family to gather her belongings. 104 Ariz. at 580–81. An argument ensued inside the home between the defendant and his wife's father and brother; the defendant shot and killed them, then ran outside and physically assaulted his wife. *Id.* at 581. The defendant was charged with two counts of first-degree murder and one count of assault-with-intent-to-murder against his wife. *Id.* at 580, 582. The defendant's wife testified at trial, and he was convicted on all three counts. *Id.*

¶14    On appeal, the defendant argued that allowing his wife to testify regarding the murders violated the anti-marital fact privilege. *Id.* at 582. We disagreed, concluding that the crime exception encompassed not only the assault charge, but also permitted the wife to testify about the murder charges. *Id.* at 586. In reaching this conclusion we explained that the crime exception applies when "the crime committed [s]o closely touches or affects the other spouse as to render the reason for the rule—promotion of marital peace and apprehension of marital dissension—inapplicable." *Id.* at 585; *see also State v. Salazar*, 146 Ariz. 547, 548, 550 (App. 1985) (holding that the crime exception permitted a wife to testify in her husband's trial for vehicular manslaughter and DUI when the husband was also charged with endangering his wife, and all the charges arose from the same course of events).

¶15 We again addressed the crime exception in *Whitaker*. There, the defendant broke his estranged wife's apartment window and fired four shots into the building while the wife, her boyfriend, and her daughter were home. *Whitaker*, 112 Ariz. at 538–39. A jury convicted the defendant of assault with a deadly weapon. *Id.* at 538. On appeal, the defendant argued that allowing his wife to testify at trial violated the anti-marital fact privilege. *Id.* at 539. Rejecting that argument, we held the wife's testimony was permitted under the crime exception. *Id.* at 540–42.

¶16 In applying the crime exception in *Whitaker*, we used a different test than the one used in *Crow*. Specifically, we relied on a New Jersey case, *State v. Briley*, 251 A.2d 442 (N.J. 1969), which involved a defendant's "atrocious assault and battery" of his wife and murder of her acquaintance, with "both charges growing out of a single incident." *Whitaker*, 112 Ariz. at 541. We quoted the following principles from *Briley*:

> If there is a *single criminal event* in which she and others are targets or victims of the husband's criminal conduct in the *totality of the integrated incident* and formal charges are made against the husband for some or all the offenses committed (*one of which charges is for an offense against the spouse*), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding. And, in this connection, it should be immaterial that the offense against the wife does not reach the same dimensions of criminality as it does against the third-party victim.

> And:

> . . . [I]n view of subsection (b) of the rule, the requirement for a spouse's consent mentioned in subsection (a) must be regarded as applicable only to a criminal proceeding in which the wife's role is *strictly that of a witness*, as distinguished from that in which she is a victim or an intended victim, *or one victim in a unitary event in which her husband is a criminal actor*.

*Id.* at 541–42 (emphasis added) (internal citations omitted) (quoting *Briley*, 251 A.2d at 446, 448). Applying this rationale, we concluded that the superior court did not abuse its discretion in allowing the defendant's wife to testify, noting that "Mrs. Whitaker and her child were potential victims of defendant's assault" and "[t]he evidence is sufficient from which the trial

court could find that Mrs. Whitaker and her daughter were endangered by the gunfire." *Id.* at 542.

**¶17**　　　　In sum, *Whitaker* holds that when a defendant commits a crime "against" his or her spouse and is charged for that crime, the crime exception allows the witness-spouse to testify not only regarding that charge, but also as to any charges arising out of that same unitary event. *Id.* at 539, 541–42.

3.

**¶18**　　　　We recognize some differences between the tests used in *Crow* and *Whitaker*. Although *Whitaker* relied on *Crow*, it also further developed and refined the test applied in *Crow*. We therefore conclude that *Whitaker* sets forth the proper test that courts should follow in applying the crime exception.

**¶19**　　　　Our conclusion is supported by decisions from other jurisdictions having an identical or nearly identical crime exception as Arizona's. In several of these jurisdictions, courts have applied a "unitary event" approach similar to the test used in *Whitaker*. *See, e.g.*, *People v. Ford*, 388 P.2d 892, 901 (Cal. 1964) (concluding that crime exception applied to wife's testimony where defendant kidnapped wife and shot police officer because "the crime of kidnaping was still being committed when the shooting occurred"), *overruled in part on other grounds by People v. Satchell*, 489 P.2d 1361 (Cal. 1971); *People v. Vieau*, 357 N.W.2d 736, 738 (Mich. Ct. App. 1984) (relying on *Briley* and concluding that the crime exception applied where defendant shot his wife and her acquaintance because the shootings happened "at the same time" and were "part of the same transaction," even if the crimes were tried separately); *Miller v. State*, 111 N.W. 637, 638–39 (Neb. 1907) (concluding that crime exception applied where defendant shot his wife and her parents because "the shots fired by the defendant . . . were so closely connected in point of time as to be a part of the res gestæ"); *State v. Mowery*, 438 N.E.2d 897, 900–01 (Ohio 1982) (relying on *Briley* and holding that the crime exception applied where defendant broke into home and shot estranged wife and her companion because the crimes were "*one continuous transaction* or happening culminating in offenses against two individuals" and "[t]he three offenses were not well-defined and separate, but rather, were overlapping and intertwined"); *Brown v. Commonwealth*, 292 S.E.2d 319, 323 (Va. 1982) (relying on *Briley* in construing crime exception and holding that "where one spouse is indicted for an offense against the other and an offense against a third party, and both offenses arose from a common criminal enterprise, the witness-spouse can testify against the defendant-spouse in

the prosecution of both charges"); *State v. Thompson*, 564 P.2d 315, 317–18 (Wash. 1977) (following *Briley* and concluding that crime exception applied in "this carefully defined situation" where during one night, defendant beat his wife and killed her romantic partner, because there was a "logical relationship of the crimes"), *overruled on other grounds by State v. Thornton*, 835 P.2d 216 (Wash. 1992).

**C.**

**¶20** As Craig concedes, H.C. may testify about the criminal damage charge. If we assume the City's allegations are true, Craig clearly committed a crime "against" H.C. when she became intoxicated and damaged their vehicles. *See* § 13-4062(1); *see also* § 13-1602(A)(1) ("A person commits criminal damage by . . . [r]ecklessly defacing or damaging property *of another person*." (emphasis added)).

**¶21** The crime exception also applies to the DUI charges. The conduct forming the basis for both the criminal damage charge and the DUI charges—Craig's alleged intoxication and subsequent reckless behavior in trying to drive the mini-van—is based on one unitary event.

**III.**

**¶22** Finally, we address whether the municipal court erred in severing Craig's DUI charges from the criminal damage charge. We review a trial court's ruling on severance for an abuse of discretion. *See State v. Murray*, 184 Ariz. 9, 25 (1995); *Whitaker*, 112 Ariz. at 542. "An error of law committed in reaching a discretionary conclusion may, however, constitute an abuse of discretion." *Busso-Estopellan v. Mroz*, 238 Ariz. 553, 554 ¶ 5 (2015) (quoting *State v. Wall*, 212 Ariz. 1, 3 ¶ 12 (2006)).

**¶23** Craig conceded at oral argument that if the crime exception applies to H.C.'s testimony regarding the DUI charges, there is no basis for severance. We agree. Because H.C. may testify about Craig's DUI charges, severance is no longer "necessary to promote a fair determination of [the] defendant's guilt or innocence of any offense." Ariz. R. Crim. P. 13.4(a).

**CONCLUSION**

**¶24** We reverse the municipal court's ruling on the anti-marital fact privilege and remand the case to that court for further proceedings consistent with this opinion. Additionally, we vacate the decisions of the superior court and the court of appeals and lift the stay we previously granted.